## BOARD OF COUNTY COMMISSIONERS FOR ALBANY COUNTY v. CHAPLIN ET AL.

PUBLICATION OF NOTICE OF TAX SALE—OFFICIAL NEWSPAPER OF COUNTY—STATUTORY CONSTRUCTION.

1.  In publishing notice in a newspaper in the county of the sale of real property for delinquent taxes, the treasurer is not restricted to the newspaper designated by the county board as the "official newspaper" of the county, but may publish it in any newspaper in his county; and the county is liable for the expense thereof. (Clark, J., dissenting.)

2.  The special statutory provision for such publication (R. S., Sec. 3822) excepts it out of the general provisions of the statutes. (Clark, J., dissenting.)

[Commenced in District Court April 14, 1893—Decided July 25, 1894.]

ERROR to District Court for Albany County. HON. JOHN W. BLAKE, Judge.

Action by Chaplin & McRae, publishers of the "Laramie Weekly Republican," a newspaper in Albany County, to recover from the county pay for publishing a notice for the sale of lands for delinquent taxes. Judgment for plaintiffs. The county brought error. The material facts are stated in the opinion.

*W. H. Bramel* and *N. E. Corthell,* for plaintiff in error.

Power to make contracts is conferred upon counties. (R. S., sec. 1791.) The powers are exercised by a board of commissioners. (1793.) It is necessary that they have control of expenditures. (Roberts v. People, 9 Colo., 458; Sexton v. Cook, 114 Ill., 177; Shanklin v. Madison Co., 21 O., 583.) The board and not the treasurer is the proper authority to designate the newspaper for publication of the tax sale notice. (People v. Board, 73 N. Y., 604; Maxwell v. Supervisors, 56 Cal., 114; Times Pub. Co. v. Alameda Co., 64 id., 469; State v. Supervisors, 24 Neb., 106; Merriman v. Knight, 43 Minn., 493; Fairchild v. City, 46 id., 540; Payne v. Washington Co., 25 Fla., 798; Wren v. County, 24 Kan., 304; Robson v. Smith, 32 Pac., 32; Re Smith, 52 N. Y., 526; Re Burmister, 76 N. Y., 174; Re Aster, 50 id., 363; Re Douglas, 46 id., 42; Re Phillips, 60 id., 16.)

*M. C. Jahren* and *Brown & Arnold,* for defendants in error.

The different officers of a county are its agents only under authority conferred by statute. The county itself is a creature of statute, and the different officers, including the Board of County Commissioners, only exist by virtue of the law, and each officer draws the warrant of his authority only from the statute. Within the scope of their statutory authority each officer is supreme, amenable only to the law which called the office into being. The Board of County Commissioners have only power to represent the county in "cases where no other provision is made by law." (Sub-Division 5, sec. 1801, Revised Statutes.)

Nor can this enumerated list of powers be enlarged by implication.

It is not only the right, but the duty of the treasurer to give the notice, untrammeled by the Board of County Commissioners in the selection of a newspaper, he alone being responsible on his official bond for any error or irregularity in connection with the advertisement, and neither by provision nor by implication has the Board of County Commissioners any control over the matter. (Randall v. Yuba Co., 14 Cal., 219; Bartholemew v. County Pa. St., (22 Atl., 1122.) The statutes under which the decisions cited by plaintiff in error were rendered differed essentially from ours. As to power of treasurer see also Pub. Co. v. Whitney, 97 Cal., 283.

CONAWAY, JUSTICE.

On the 4th day of February, 1893, the treasurer of the county of Albany delivered to the defendants in error the "notice for the sale of lands and improvements for taxes," and requested its publication in the Laramie Weekly Republican, a newspaper published by defendants in error in the county of Albany. The notice was so published weekly for five successive weeks, the first publication being made on the ninth day of February, 1893. On the third day of January, 1893, plaintiff in error had declared the Laramie Boomerang to be the official paper of Albany county. This order was published in the Boomerang on the fifth day of the same month.

On the ninth day of February, 1893, plaintiff in error "instructed" the county treasurer "to cause the tax sale and all printing of the county to be published in the Laramie Boomerang, the same having been designated as the official paper of the county pursuant to law." The notice of the tax sale was not published in the Laramie Boomerang.

Plaintiff in error refused to pay defendants in error for this publication. Defendants in error thereupon gave notice of appeal, brought their action in the district court and recovered judgment.

It is assigned as error that this judgment is contrary to law.

Counsel for plaintiff in error say in their brief:

"The case presents a single proposition of law, to-wit: When the board of county commissioners of a county acting under section 1817 Revised Statutes of Wyoming have designated which shall be the official paper of the county, has the county treasurer the right to publish the tax sale notice in another paper so as to charge the county with the expense of such publication?" Taking the word "right" as equivalent to power this may be considered as a correct statement of the question. The power of the county treasurer in the premises is conferred by section 3822 of the Revised Statutes, in these words: "The treasurer shall give notice of the sale of real property for delinquent taxes, by publication thereof, once a week for four weeks, in a newspaper in his county, if there be one, the first insertion of which notice shall be at least four weeks before the day of sale, and by a written notice posted on the door of the court house, or building commonly used therefor, for four weeks before the sale; and if there be no newspaper published in the county, the like notice shall be given by posting one written notice in each of the five most public places in the county in which any land to be sold is situated, and one on the court house door, or door of the county building. Such notice shall contain a notification that all lands on which the taxes of —— have not been paid will be sold, and the time and place of such sale, with a list of the lands. Ten per cent. upon the amount of taxes due shall be added when the lands are advertised."

The county treasurer did just what this statute requires him to do. This is not questioned. But it is urged that the authority and duty of the county treasurer in the collection of delinquent taxes under this statute is materially restricted by other statutes upon other subjects. Counsel for plaintiff in error seem to rely upon the general power of the board of county commissioners to contract for the county and to manage its business. This general power is derived from sections 1791, 1793 and 1801 of the Revised Statutes. Section 1791 provides that each organized county in the territory shall be a body corporate and politic, and as such be empowered, among other things, "to make all contracts and do all other acts in

relation to the property and concerns of the county necessary
to the exercise of its corporate or administrative power." Sec-
tion 1793 provides that: "The powers of a county as a body
politic and corporate shall be exercised by a board of county
commissioners." These sections are parts of an act of the
Legislature of 1869, approved on December 10th of that year.
But section 3822 was enacted by the same Legislature and ap-
proved the same day, and it makes special provision that the
county treasurer shall give notice of the sale of real property
for delinquent taxes by publication thereof, etc. So the
Legislature did not include the publication of this notice in
the "acts in relation to the property and concerns of the
county necessary to the exercise of its corporate or adminis-
trative powers," which acts were to be done by the county
itself as a body politic and corporate through its board of com-
missioners. Or, if the power of the county conferred by sec-
tion 1791 is sufficiently broad to include the publication of
this notice in its scope, then the Legislature by section 3822
excepted it out of that general grant of power, which it is
always competent for the Legislature to do. The special
provision made by section 3822 for the publication excepts it
out of the general provisions of the statutes. This is a general
rule of law, independent of statutory provisions, and it is
also fully recognized by our statute. Rev. Stat., Sec. 1801, sub-
division 5. Plaintiff in error must have acted upon one or
the other of these views of the law, for it made no attempt
to contract for the publication of the notice of tax sale, nor
any direct attempt to cause it to be published in any par-
ticular paper. Plaintiff in error merely instructed the treas-
urer to publish the notice in the Boomerang, recognizing that
the publication should be made by the treasurer; and this in-
struction is without warrant of law. It seems clear that
under these statutes alone the authority of the county treas-
urer to cause the notice of the sale of real property for delin-
quent taxes to be published in any newspaper published in his
county is unquestionable. But on December 15, 1877, an
act was approved entitled "An act concerning the publication
of the county commissioner's proceedings and for other pur-

poses." Neither in the title nor in the body of the act is any reference made to the county treasurer or to any of his duties, nor to the collection of delinquent taxes or the proceedings for that purpose. It would seem that none of these matters were in the contemplation of the Legislature in passing the act. The act requires some publications to be made that were not formerly required, but says nothing of the publication of the notices of tax sale. It requires the territorial superintendent of public instruction to cause a notice of the meeting of the annual teachers' institute to be published in one paper in each county; the clerk of the district court to furnish a copy of the grand jury's report to a newspaper in the county for publication, and the board of county commissioners of the several counties to cause to be published in some newspaper published in their county the commissioner's proceedings, the delinquent tax list, and a notice of all general and special elections. The section requiring the publication of the delinquent tax list was repealed by the first State Legislature.

Section six of the act appears in the revised statutes as follows: "Sec. 1817. When there is more than one paper published in any county the board of county commissioners shall designate which shall be the official paper of the county."

There are two more sections in the act specifying prices and kind of type to be used in county and legal advertising.

There is nowhere in our statutes any provision requiring any publication to be made in the newspaper designated as the official newspaper of a county. In order to sustain the contention of plaintiff in error the court must supply a provision requiring the county treasurer to publish the notice of the sale of real property for delinquent taxes in the official paper of his county. We must go further and make this judicial legislation mandatory, as though it read that he should make the publication in the official paper of the county and not in any other. We must go further, in this case, and make it mandatory to the extent that if the treasurer should make the publication in another paper and not in the official paper the county should not pay for such publication though it accepted and retained the resulting benefit in the collection

of its delinquent taxes with ten per cent. added. This is utterly inequitable and unreasonable, and it is a result not to be sought by forced construction. And if the courts may, in effect, supply such provisions, where shall they stop?

An official paper of a county is a thing unknown to the common law. Our statutes do not define it or prescribe what use shall be made of it. And this is a legislative and not a judicial function. What use, if any, the Legislature intended should be made of the official paper of a county is a profound secret. Such papers are of recent date. Their functions are not established either at common law or by custom. They are purely statutory. The general functions and duties of most county officers are quite well established by common law and custom. But it is not within the scope of judicial authority to assign these official functions and duties to the officers respectively. This is the business of the Legislatures and not of the courts. So far as we are aware, no court or judge or law writer has attempted to define what an official newspaper of a county may be. The American and English Cyclopedia of Law furnishes a definition, rather in the nature of a description, of an official newspaper. It reads: "Official newspapers are those designated by State or municipal legislative bodies, or agents empowered by them, in which the public acts, resolves, advertisements and notices are required to be published." Then it would seem that an official newspaper of a county must be one in which the public acts, resolves, advertisements and notices of the county are required to be published. No such requirements and no such paper is known to the laws of Wyoming. Requiring these things, or any of them, to be published in any paper is a legislative act. It is not within the scope of judicial authority. Our Legislature has not done this, and the courts have not authority to do it. And it must be observed that the public acts, resolves, advertisements or notices of the county are not the acts, resolves, advertisements or notices of the county treasurer or of any other county official or officers, except the board of county commissioners. Rev. Stat., sec. 1793. The county is defined by statute to be a body corporate and politic, and its powers

as such are exercised by its board of commissioners. The acts, resolves, advertisements and notices of the treasurer, sheriff, clerk, or other county officer, are clearly to be distinguished from the acts, resolves, advertisements and notices of the county itself.

But it is urged that it is necessary for the courts to specify and provide something to be published in the paper designated as the official paper of the county, in order to give effect to section 1817 of the Revised Statutes. As to this it must be said that the board of county commissioners of Albany county have already given to that section its full effect. It simply provides that where more than one paper is published in a county the board shall designate which shall be the official paper of the county. The board of commissioners of Albany county have done so, and in so doing have fully exercised and exhausted their power in the matter. But if the courts should undertake to supply material for the paper designated as the official newspaper of the county, why extend the judicial drag net so as to reach the acts, resolves, advertisements or notices of the county treasurer, or other county officers, who are not authorized to exercise the powers of the county as a body politic and corporate? Why not confine the supply of material to the acts, resolves, advertisements and notices of the county itself? Indeed, why not confine it to the very publications which the act of 1877 requires the county commissioners to cause to be made? Among all these speculations, and many others, are we wandering without a guide when we attempt to supply material for the official newspaper of a county. It is not for county commissioners or courts to go beyond the statute.

If the courts attempt to supply material for the official papers of the counties in the absence of statutes specifying the material, they sail upon unknown seas. It is as if the Legislature should create a new court unknown to the law, but should give it no jurisdiction, and this court should be called upon to define its jurisdiction; or as if any new office should be created without assigning to it any duty, and this court should be called upon to define its duties; or as if the laws for

the maintenance of jails remaining in force, all laws for imprisoning any one in them should be repealed. This court could not supply jurisdiction to the new court, duties for the new officers, or prisoners for the jails, the statute having failed to do so. Neither can this court supply material for the official paper of a county; the statute having failed to do so.

In addition to this there is the overpowering equitable consideration that the county has accepted and is enjoying the benefit of the publication; that it took no legal measures to prevent it, but refuses to pay for it. It is not a question which of two newspapers shall be paid. The publication was made in but one. It is not a question whether the county shall pay twice. It is whether the county shall pay once.

It would seem that section 3822 of the Revised Statutes is the law prescribing the duties of the county treasurer in giving notice of the sale of realty for delinquent taxes, that for the performance of these duties in the manner therein specified he and he alone is officially responsible. That section is not affected by other legislation, and in following its provisions the defendant in error has simply discharged his official duty.

*The judgment of the district court is affirmed.*

GROESBECK, C. J., concurs.

CLARK, J., dissents.