OCTOBER TERM, 1887.    505

Sioux City & Iowa Falls Town Lot & Land Co. v. Griffey et al.

SIOUX CITY & IOWA FALLS TOWN LOT & LAND CO. v. GRIFFEY ET AL.

| 72 | 505 |
|----|-----|
| s102 | 129 |
| 72 | 505 |
| 109 | 325 |

1. **Public Lands:** RAILROAD GRANT: WHEN COMPANY ENTITLED TO LAND. Plaintiff claims title to the land in question under act of congress of May 26, 1856, granting to the state of Iowa lands in aid of the construction of certain railroads, and the act of the general assembly of Iowa, accepting the trust and granting said lands to the Dubuque & Pacific Railroad Company. But the railroad company was not entitled to the land upon the mere survey and staking out of the line of its road, nor until the plat of the survey was filed in the general land office at Washington; (see cases cited in opinion;) and until it became so entitled the land was open to pre-emption. And since, before such plat was so filed, the defendant had obtained a valid pre-emption right upon which he afterwards procured a patent from the government, *held* that his was the better title.

2. **Adverse Possession:** TITLE BY: EVIDENCE. Plaintiff's claim of title by adverse possession to the land in controversy is not supported by the evidence. (See opinion.)

*Appeal from Woodbury District Court.*

MONDAY, OCTOBER 10.

ACTION in equity to determine the ownership of certain real estate. Judgment for the defendants, and plaintiff appeals.

*Joy, Wright & Hudson,* for appellant.

*O. C. Tredway, Curtis, Earl & Burdette* and *John. F. Duncombe,* for appellees.

SEEVERS, J.— The plaintiff claims title to the real estate in controversy under the act of congress approved May 26, 1856, granting to the state of Iowa lands in aid of the construction of certain railroads in said state, and the act of the general assembly of the state of Iowa accepting the trust and granting said lands under certain conditions to the Dubuque & Pacific Railroad Company, under which the plaintiff claims. It will be conceded that the road was constructed, and the lands

earned, and that the same were conveyed, on the 5th day of July, 1871, by the state to the corporation by which the road was constructed. The plaintiff claims that the line of the road was definitely fixed when such line was surveyed and staked out upon the surface of the ground, on the 5th day of July, 1856, and that the rights of the plaintiff's grantors attached at that time thereto. The land in question is situated within the six-mile limit, and was duly certified in April, 1863, by proper officers of the government of the United States, to the state of Iowa, for the use of the corporation constructing the road. The defendants contend that such certification was improperly made, and that no title to the land passed to the plaintiff under the land grant, for the reason that the line of the road was not definitely located until October, 1856, when the plat of the road as located was filed in the proper office at Washington City; prior to which time, and on July 19, 1856, as the defendants contend, the defendant Griffey obtained a pre-emption right on said land, which he afterwards proved up, and obtained the usual certificate issued by the local land-officers. The pre-emption entry was afterwards, in July, 1857, canceled by the commissioner of the general land-office, because it was supposed to conflict with the railroad grant. Griffey, however, refused to accept the money paid the government for the land, or to acquiesce in the cancellation, but he continued with more or less persistency to claim the land under his pre-emption right, until finally he made application to the proper authorties for a reinstatement of such right, and for a patent therefor. There was a hearing before the commissioner, and from his decision the plaintiff appealed to the secretary of the interior, who affirmed the ruling of the commissioner, and thereunder a patent was issued to Griffey on June 30, 1882. Both parties claim to have been in the actual, open, exclusive and notorious possession of the land, on which the plaintiff or its grantors have paid the taxes ever since it became taxable in 1872. We have not deemed it necessary to set out th

acts of congress and of the state, for the reason that the substance and purport thereof are fully known to the litigants and the profession. It should possibly be stated that immediately after the act of congress of May 15, 1856, took effect, the commissioner of the general land-office withdrew from public entry or pre-emption the land in controversy. Notice of such withdrawal was received at the local land-office in Iowa prior to July 19, 1856. But in June, 1856, the commissioner advised the local land-offices that he had made such order by mistake, and that the land in question was subject to pre-emption.

I. The first question to be determined is whether under the railroad grant the right of plaintiff's grantor attached to the land prior to the 19th day of July, 1856, and this depends on the further question whether the survey of the line of the road made on July 5, 1856, and staking out such line, can be regarded as the definite location of such line as required by the act of congress, or whether such location should not be regarded as made until the plat of the survey was filed in the general land-office, in October, 1856. We have reached the conclusion that the mere survey and staking out the road on the surface of the ground is not such definite location as required by the act of congress, but that such location cannot be regarded as being definitely made until a plat of such survey is filed in the proper office. We do not deem it necessary to state the reasons upon which this conclusion is based, for the reason that this court is committed to such rule. *Chicago, R. I. & P. R'y Co. v. Grinnell*, 51 Iowa, 476; *Iowa Falls & S. C. R'y Co. v. Beck*, 67 Id., 421. And we think the same rule has been adopted by the supreme court of the United States. *Van Wyck v. Knevals*, 106 U. S., 360; 1 Sup. Ct. Rep., 336; *Kansas Pac. R'y Co. v. Dunmeyer*, 113 U. S., 629; 5 Sup. Ct. Rep., 566; *Grinnell v. Chicago, R. I. & P. R'y Co.*, 103 U. S., 739. It follows that the land in question was subject to pre-emption on the 19th day of

1. PUBLIC lands: railroad grant: when company entitled to land.

July, 1856, and that no right thereto passed to the plaintiff's grantor under the railroad grant until after that time, and as Griffey obtained a valid pre-emption right, which he proved up, and has obtained a patent from the government, he and those claiming under him have the better title to the land in controversy, unless such right is barred by the statute of limitations, which question we proceed to consider.

II. As has been stated, the state conveyed the land in question to the plaintiff's grantor in 1871. Such convey-

2. ADVERSE possession: title by: evidence.

ance, we think, was sufficient to give the plaintiff's grantor color of title; and, based thereon, the plaintiff claims that it and its grantors have been in the actual, visible, notorious and exclusive possession of the land, under a claim of ownership, for more than ten years prior to 1863, when the defendants, with force and violence, took possession of said premises. The evidence as to possession is exceedingly unsatisfactory. But it sufficiently appears that Griffey was in possession for a time during 1856, and that he moved the house built by him from the premises during the succeeding winter. He, however, commenced the erection of another house in 1857, but he never finished it, and it was never occupied by any one; and some time afterwards, and probably in 1859, it was moved from the premises by some unknown person. Griffey personally never was in possession except as stated. John Doss heard it was railroad land, and took possession of a portion of it in 1861, but such possession was not taken for the railroad company. There is some evidence tending to show that it was adverse to the company, at least for a time, for he made some efforts to pre-empt it. He remained in possession until 1871, when the land was conveyed to the railroad company by the state; and it will be conceded that he then, or shortly afterwards, became the tenant of the railroad company, and paid rent for a year, and then refused to pay rent, although he occupied a portion of the premises until after 1877. After leasing, Doss seemed to have reached the conclusion that the land in

controversy did not belong to the plaintiff's grantor, and hence he refused to pay rent as stated; and whether, the last two years he was in possession, he held such possession for or under the plaintiff, or its grantors, is doubtful; but, conceding that he did, he moved from the premises in 1877, and entirely abandoned the possession thereof. At most he had been in possession six years after plaintiff's grantor had been vested with color of title. About 1869 one Dally, a railroad employe, built a house, with railroad lumber, on the land, and he moved into the house, and remained in possession until 1871. It is doubtful whether he entered into possession under or for the railroad company; but, conceding that he did, he sold the house to Pritchard in 1871, and abandoned the premises. Pritchard moved into the house in 1871, either at the instance of Griffey or for himself, and remained in possession until 1878, when he moved the house away and abandoned the premises. It is not claimed that Pritchard went into possession under or for the plaintiff or those under whom it claims, but it is conceded that such possession was held adversely to the right of the plaintiff Hedges went into possession of a portion of the land in 1879, under a lease from the plaintiff, and he sublet to Hughes, who was forcibly ejected by the defendants in 1883.

This action was commenced in June, and the answer and counter-claim of the defendants, setting up their title, was filed in November, 1885, so that Hedges and Hughes were only in possession about four years; and, it will be observed between the time the possession of Doss terminated and that of Hedges commenced, there was a period of about two years. Therefore it cannot be said that the possession of the plaintiff was continuous. Besides this, Pritchard was in hostile possession of the premises from 1871 to 1878. It also appears that several other parties built houses on, and occupied portions of, the premises for several years, and it does not appear under whom they claimed, so that we think the plaintiff has failed to show by a preponderance of

the evidence that it or its grantors have had exclusive possession of the land under color of title for the period of ten years, and therefore the right of the defendants to the affirmative relief granted them by the court below is not barred by the statute of limitations.                          AFFIRMED.