THE IOWA RAILROAD LAND COMPANY, Appellant, v. SAMUEL T. DAVIS.

**Taxation:** PUBLIC LANDS: *Patent.* A pre-emption claim was canceled, and the land certified to the state, which patented it to a railroad company. The pre-emption claimant, however, refused to receive back the payments which had been made by him, and insisted on the validity of his claim; and subsequently the certification was canceled, and a patent issued to him. *Held,* that the United States did not hold the title in trust after the certification, and the land became taxable from that time.

**VOLUNTARY PAYMENT:** *Mistake of law.* Where the railway company, after the annulment of the certification and the issuance of the patent to the claimant, and after decisions of the general land office of the United States supreme court against the contention on which it based its claim, paid taxes on the land, long before they became delinquent, and without the claimant's consent, it can not recover the amount paid from the claimant.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

THURSDAY, MAY 13, 1897.

SUIT in equity to recover for taxes paid by plaintiff and its assignors upon certain lands in Woodbury county, the title to which at the time the taxes were paid being in dispute, and finally found by this court to be in defendant's grantors (see 72 Iowa, 508, 34 N. W. Rep. 304), this decree being affirmed by the supreme court of the United States (143 U. S. 38, 12 Sup. Ct. Rep. 362). The trial court sustained a demurrer to the plaintiff's petition, and plaintiff appeals.— *Affirmed.*

*Chas. A. Clark* for appellant.

*C. C. Cole, O. C. Treadway,* and *S. T. Davis (pro se)* for appellee.

DEEMER, J.—From the petition we gather the following facts, which are regarded as controlling. On the nineteenth day of July, 1856, Thomas L. Griffey, defendant's grantor, filed a pre-emption claim to certain lands in Woodbury county, in the United States land office, and some time prior to July 7, 1857, made final proofs. On this last-named date the commissioners of the general land office canceled the pre-emption entry and location, but Griffey refused to receive back the payment made by him for the land, and insisted upon the validity of his claim. Afterwards, and on the thirtieth day of June, 1882, the letter of cancellation was withdrawn and set aside, and a patent was issued to Griffey covering the land originally located by him. The plaintiff claimed title to the lands under grant of May 15, 1856, and certified as land in place, April 7, 1863. After the completion of the railway, and on July 5, 1871, the land was patented by the state to the railway company. It appears that the railway was surveyed past the land in question July 5, 1856, but the plat of this survey was not filed with the state department until October 2, 1856, nor was it filed in the United States land office until October 13, 1856. In the case of *Land Co. v. Griffey*, 72 Iowa, 505 (34 N. W. Rep. 304), being a controversy between plaintiff's assignor and the defendant's grantor,—we held that the railroad company acquired no interest in the land until a plat of the survey was filed in the general land office at Washington; following a line of decisions commencing with *Railroad Co. v. Grinnell*, decided June 14, 1879, and reported in 51 Iowa, 476 (1 N. W. Rep. 712). We further held that until the plat was so filed the land was open to pre-emption, and that since, before such plat was so filed, defendant had obtained a valid pre-emption right, upon which he afterwards procured

a patent, his was the better title. This case was affirmed by the supreme court of the United States, the opinion being found in the case referred to in the statement preceding this opinion. 143 U. S. 38; (12 Sup. Ct.Rep. 362). The land was taxed for the year 1871, and for each and every subsequent year down to and including the year 1890, and the taxes so assessed were paid by the plaintiff and its assignors. These taxes were, as a rule, paid before the first day of March of the year succeeding the levy, and all except two small items were paid prior to the first day of April. The petition alleges that plaintiff and its assignors supposed and believed, until the adverse decision against it in the supreme court of the United States, that it was entitled to the land under the act of congress approved May 15, 1856, and that the taxes were paid in good faith; each and all believing that it was the lawful owner of the land, and held the same by good and indefeasible title. Davis acquired title to the lands by virtue of certain mesne conveyances from Griffey, and with full notice and knowledge that plaintiff and its assignors had paid the taxes thereon. This suit is for an accounting as to the taxes paid, for judgment for the amount thereof, and to establish a lien to the amount of the judgment against the land. The demurrer is the general equitable one, and further says that all claims for taxes paid prior to the year 1887 are barred by the statute of limitations. Another ground of the demurrer is that the lands were not taxable prior to the year 1883, and plaintiff is not entitled to any relief for taxes paid prior to that date. The trial court found that plaintiff's title was and is absolutely null and void, and that it and its grantors paid the taxes under a mistake of law, and are not entitled to recover. It also found that the lands were not subject to taxation prior to the year 1882, and that in no

event would defendant be liable for taxes paid by
plaintiff or its assignors during the years 1871 to 1882,
inclusive.

Appellant's counsel in argument first attacks
this last conclusion of the court, and, following the
order adopted by him, we turn our attention to this
proposition. The conflicting claims of the par-
with reference to this point may be stated as
follows: Appellant contends that, when one
acquires a vested right to a patent for lands, it is the
equivalent of a patent actually issued, and, when the
patent does issue, it relates back to the inception of
the right of the patentee, and he takes the legal title,
by relation, from the date of his original right thereto,
and that under the facts of this case the legal title to
the land was in defendant and his grantors from the
year 1856, and was taxable from and after that year.
It also contends that, if it be held that the lands
claimed under the land grant were not taxable until
the patent issued, as the state patented the land to
plaintiff's assignors in the year 1872, it was taxable
for that and subsequent years. While, on the other
hand, appellee's counsel contend that the lands were
not taxable until the patent issued to Griffey, for the
reason that prior thereto, and during the controversy
between the parties as to the title to the land, the
United States held the title in trust for the party
entitled thereto, and that while so held the land was
not subject to taxation. Neither party disputes the
proposition of law made by the other, and the case
turns upon this one proposition, did the United States
hold the title in trust prior to the time it issued the
patent to Griffey? Answer to this question depends
upon the solution of the question as to whether
the government held the legal title to the land
after it certified the same to the railway company.
The petition recites that the secretary of the

interior certified the land to the state of Iowa April 7, 1863, and that the state patented the same to plaintiff's assignors July 5, 1871. Now, it has frequently been held that such certification and patent operate to transfer the legal title, subject to be decreed to another who subsequently shows himself entitled thereto. The legal title passed to the plaintiff's assignors, and the lands were clearly taxable from that time on. *Chicago, R. & M. R. Co. v. Carroll County*, 41 Iowa, 153; *Land Co. v. Antoine*, 52 Iowa, 429 (3 N. W. Rep. 468); *American Emigrant Co. v. Iowa R. L. Co.*, 52 Iowa, 326 (3 N. W. Rep. 88); *Mower v. Fletcher*, 116 U. S. 385 (6 Sup. Ct. Rep. 409); *Williams v. U. S.*, 138 U. S. 516 (11 Sup. Ct. Rep. 457); *Buena Vista County v. Iowa Falls & S. C. R. Co.*, 112 U. S. 176 (5 Sup. Ct. Rep. 84). The cases of *Land Co. v. Fitchpatrick*, 52 Iowa, 244 (3 N. W. Rep. 40); *Iowa Homestead Co. v. Webster County*, 21 Iowa, 221; *Dickerson v. Yetzer*, 53 Iowa, 681 (6 N. W. Rep. 41); *Doe v. Land Co.*, 54 Iowa, 657 (7 N. W. Rep. 118); and *Grant v. Land Co.*, 54 Iowa, 673 (7 N. W. Rep. 113),—are not in point, for the reason that in none of them was the land certified by the general government, and patented by the state. On the contrary, in each case the title was withheld by the general government pending a controversy between conflicting claimants, and it was thought improper to hold that the land was subject to taxation and to tax sales while the United States had a duty to perform in regard to it. It is clear that the land was taxable after its certification by the general government. Whether it was taxable from the time Griffey was entitled to receive his patent we need not determine, for no taxes were levied until after the United States had certified the lands, and transferred the legal title to the railroad company. The case of *Wood v. Curran*, 76 Iowa, 562 (41 N.

W. Rep. 214), is not in conflict with the views herein expressed.

Appellant's next point is that it paid the taxes in good faith, and that under the doctrine announced in *Goodnow v. Moulton*, 51 Iowa, 555 (2 N. W. Rep. 395), and other like cases, it is entitled to recover the amount thereof, with interest, and to establish the amount of such payments as a lien upon the land. To this appellee responds by saying that the taxes were paid under a mistake of law; were paid voluntarily with full knowledge of all the facts, and without the request or consent of the owner of the land, in violation of a right given by statute to the owner, not in good faith, but with knowledge that their title was void, and that claims for all taxes paid prior to the year 1887 are barred by the statute of limitations. Appellee confidently relies upon the cases of *Garrigan v. Knight*, 47 Iowa, 525; *Montgomery County v. Severson*, 68 Iowa, 451 (27 N. W. Rep. 377); *Read v. Howe*, 49 Iowa, 65; *Barr v. Patrick*, 59 Iowa, 134 (12 N. W. Rep. 805); *Dubuque & S. C. R. Co. v. Board of Supervisors*, 40 Iowa, 16. In the case of *Garrigan v. Knight, supra*, we held, following, as we now believe, the general current of authority, that "when the title to real estate is in controversy, and one of the parties pays the taxes, and is afterwards unsuccessful in his claim of ownership, he cannot recover the taxes thus paid." It was also said in that opinion that "the mere fact that plaintiff knew the defendant was paying the taxes under claim of title is not sufficient from which to infer a promise." This case was followed in *Read v. Howe, supra*. In the case of *Goodnow v. Moulton, supra*, we modified this general rule, and held that in some cases one who pays taxes upon lands believing in good faith that he is the owner thereof may recover them of the successful litigant for the title. In that

case we said, however: "It was not until 1872, that there was an authoritative decision adverse to those claiming under the railroad grant. Under these circumstances, the Homestead Company was fully justified in believing that it was clothed with the legal title. By no amount of care and diligence could it have arrived at any other conclusion. The title was in great doubt, and nothing, under the circumstances, short of a decision of the supreme court of the United States, could reasonably be expected to settle the question. Until such decision was made, it was the duty of parties claiming under both these grants to pay the taxes. Either was fully justified in so doing. The circumstances are peculiar and anomalous, and demand the establishment or recognition of a rule consonant with law, equity, justice, and common honesty. That the defendant should reimburse the plaintiff for the taxes paid, there can be no doubt, unless there is some well-recognized principles which forbids it. We do not believe there is any such. The foregoing views do not conflict with *Garrigan v. Knight*, 47 Iowa, 525. In that case the plaintiff purchased his land from the general government. About his title there could be no dispute. This the defendant was bound to know. The latter, in fact, had no title, and this he was bound to know. Any one having ordinary knowledge of the law could and would have so advised him. The defendant, without inquiry or the use of ordinary diligence, paid the taxes. The payments, under such circumstances, were made officiously, and by an intermeddler." The *Goodnow Case* has since been followed in a number of cases, most, if not all, of which involved the same controversy, and were attended with the same peculiar circumstances. *Goodnow v. Oakley*, 68 Iowa, 27 (25 N. W. Rep. 912); *Goodnow v. Stryker*, 62 Iowa, 221 (14 N. W. Rep. 345, and 17 N. W.

Rep. 506); *Goodnow v. Litchfield*, 63 Iowa, 282 (19 N. W. Rep. 226); *Bradley v. Cole*, 67 Iowa, 652 (25 N. W. Rep. 849); *American Emigrant Co. v. Iowa Railroad Land Co.*, 52 Iowa, 327 (3 N. W. Rep. 88); *Fogg v. Holcomb*, 64 Iowa, 628 (21 N. W. Rep. 111); *Merrill v. Tobin*, 82 Iowa, 534 (48 N. W. Rep. 1044). In the case of *Goodnow v. Wells*, 76 Iowa, 774 (38 N. W. Rep. 172), we said, while following the *Goodnow-Moulton Case*, "There are members of this court who think the cited case of *Goodnow v. Moulton* was incorrectly decided." Without now questioning the soundness of the original *Goodnow Case*, it is sufficient to say that we are not in favor of further extending the rule; and that to entitle one to recover taxes paid on the land of another, the equities must be strongly in his favor, and the facts must be such as to bring the case clearly within the rule announced in the *Goodnow Cases*. It was certainly the duty of the railway company to pay the taxes assessed against the land while the legal title was in it; that is to say, down until the time the patent issued to Griffey, which was in the year 1882. At this last-named date the land department of the United States government rescinded and annulled the certification of the lands, reinstated Griffey's pre-emption, and issued him a patent for the land, which was recorded on the seventh day of July, 1882. The plaintiff and its grantors paid the taxes before the right of the owner to pay without incurring liability for interest had expired, and long before any sale of the land for taxes could have been made. Davis did not acquire any interest or title to the lands until the year 1887. The petition alleges that the attorney general of the United States held and decided in the year 1857 that the lands in question were not subject to pre-emption or selection or location by pre-emptors after the line of road from Dubuque to Sioux City was definitely fixed by

being surveyed and staked out, and the commissioners of the general land office of the United States, in accordance with such decision of the attorney general, uniformly held that such lands were not subject to pre-emption, and canceled,—erroneously, as it has since turned out,—the pre-emption of Griffey for that reason. But that plaintiff, and those under whom it claims title, always relied upon the decision of the attorney general and the action of the general land office in administering the grant, and each and all of them honestly believed that they had good and perfect title to said land until the decision of the United States supreme court aforesaid. The petition also recites as we have before stated, that the land and interior departments of the United States reversed this holding of the attorney general and the action of the land commissioner canceling and annulling the pre-emption of the land by Griffey, rescinded and annulled the erroneous certification of the land to the state, and issued a patent for the land to him, which was recorded in the year 1882. From and after this date, if not before, it was the duty of Griffey and his grantors to pay the taxes assessed against the land. It thus appears that the title under which the plaintiff and its grantors claimed was adjudged to be void and canceled by the very authorities on whose opinion they say they relied at the time they paid the taxes assessed and levied after the year 1882. Moreover, this court had held, as early as the year 1867, "that simply staking and surveying the land fixes nothing, and it is not sufficient" as against a pre-emption right. See *Fremont County v. Burlington & M. R. Co.*, 22 Iowa, 96. This decision was affirmed by the supreme court of the United States in the year 1870. See 9 Wallace, 89. Again, in *Railroad Co. v. Grinnell*, 51 Iowa, 476 (1 N. W. Rep. 712), decided in the year 1870, we said that the survey and location of the railroad, and the filing

of a map thereof in the proper office, designated the
lands in the six-mile limits, to which the grant at
once attached. This case was also affirmed by the
supreme court of the United States. 103 U. S. 739.
Not only had the various departments of the general
land office, upon whose opinions the plaintiff's
grantors relied, decided against the validity of its
claim, but all the courts of the country had, so far as
they had spoken, determined that the mere staking
and location of the road was not sufficient to carry
the title. With this knowledge, plaintiff and its
grantors paid the taxes, and in nearly every instance
paid them long before the first day of April, at which
time penalties commenced to run. Under such cir-
cumstances, there certainly was no implied request
from the defendant or his grantors, that they should
be paid by the plaintiff or its assignors, and made a
charge upon the land. The payments made by plain-
tiff and its grantors were due to ignorance or mistake
of law, pure and simple; and for the protection of
what they erroneously believed to be a good title. In
none of the cases cited by appellant has a party been
allowed to recover taxes paid after the question of title
was finally settled, and in each and every case the
payment of taxes was made in good faith, and in the
honest belief on the part of the payer that he held
title to the lands. In the case at bar, plaintiff's
assignors obtained such title as they had direct from
the general government. They in fact had no title,
and whether they were bound, as a matter of law, to
know it or not, they had notice from the general land
office that it was of no validity, and that the certifica-
tion of the lands had been withdrawn. They were
also informed by the decisions of this court, as well as
those of the supreme court of the United States, that
they had no title. Yet without inquiry or the use of
ordinary care and diligence, they paid the taxes,

These payments were also made long before any penalties attached; thus, to a certain extent, depriving the owner of his opportunity to pay. If under such circumstances, plaintiff is allowed to recover, then any intermeddler who officiously appears and pays taxes upon land before the time when landowners generally pay their taxes, may recover taxes paid. Surely courts will not give countenance to a rule which will make one the debtor of another under such circumstances. We will not undertake to review all the cases cited by appellant's counsel, nearly all of which were decided with reference to the peculiar facts appearing in each case. It is sufficient to say that we think this case is barren of such equities as, in a certain line of cases, have been held exceptional to the general rule announced in *Garrigan v. Knight*, 47 Iowa, 525.

We have already suggested a fact which we regard of special significance, and that is that plaintiff and its assignors paid the taxes long before any penalty attached, and in some instances as early as January in each year. Griffey and his grantees were the persons who should have paid the taxes on the land after the year 1882. Now the statutes give them the right to pay the taxes to the county treasurer. They had the right to pay them without penalty, under the present law, at any time prior to the first day of April in each year, and might also have paid them, with interest and penalty, at any time before sale. After sale they held the right to redeem, and, at any time within five years after the tax deed issued, could have contested the validity of the sale. The statute gives to no one else these rights, and does not expressly sanction the payment of taxes by any one save the owner of the land. From the allegations of the petition, it will be seen that plaintiff and its grantors paid the taxes after they knew that the

land department had determined they had no title, and after the courts had said that titles similar to theirs were of no validity as against a pre-emption claim.  They paid the taxes before the owner was bound to pay in order to save penalties, and by so doing deprived him of the rights given by statute, to which we have just referred, and are now attempting to fix another and different penalty than that provided by these statutes for the non-payment of taxes.  If we allow the plaintiff to recover, we say, in effect, that any one may officiously pay taxes for another at any time after they are due, and before penalty attaches against the owner, and that it then becomes the duty of the owner to hunt up this intermeddler and reimburse him, with interest.  There is no showing in the petition that plaintiff or its grantors were required to pay these taxes at the time they did in order to save or protect their legal title.  Indeed, the contrary appears, for they were paid long before they became delinquent. It does not appear that defendant or his grantors had at any time refused, or even determined not, to pay, or that he or they would not have paid before there was any danger to the title.  Why, then, infer any request from the owner to pay them?  Do not the circumstances negative any such implied request? We think they do, and are firmly convinced that there is no equity in plaintiff's claim for taxes paid after the year 1882.  As plaintiff is not entitled to recover for these taxes, its claim for taxes paid prior to that time cannot be considered, for it is barred by the statute of limitations.

We are aware that some of the statements made in this opinion are in conflict, or apparent conflict, with what has been said in some of the *Goodnow Cases*, or other cases following them; but, as we have said at the outset, we are not in favor of extending the rule

announced in the original case any further, and in order for a plaintiff who has paid taxes upon another's land to recover, he must bring himself clearly within the exception to the general rule first announced in the case of *Goodnow v. Moulton, supra.* This whole exception is based upon the maxim, *"Ex æquo et bono,"* and where the reason for the rule fails the rule itself should be held inapplicable. The judgment of the district court is AFFIRMED.