SAMUEL T. DAVIS, Appellant, v. J. A. MAGOUN, JR., County Treasurer.

**Public Lands:** WHEN SUBJECT TO TAXATION. T. pre-empted land, and his entry was canceled, because it was erroneously thought that the government's title had passed by a railroad grant, and his application to have his entry reinstated was granted, with notice that no patent would issue under existing circumstances. The cancellation was submitted and the warrant upon which entry was made relocated, but patent finally issued upon payment. *Held,* claimant became from the time of the reinstatement of the entry, the equitable owner of the land, so that the same then became subject to taxation. There was never a claim that the government had title or that title should revert to it, but simply a question to whom title from the government had passed.

Taxation: NOTICE OF TAXATION. Publication on the 9th, 16th and 23d of a month of notice of tax sale, with the sale on the 3d of the next month, satisfies the requirement of Code 1873, section 873, for publications once each week for three consecutive weeks, the last publication to be "at least one week prior to the day of sale."

SAME. The word "advertisement" in Code 1873, section 880, providing that no irregularity or informality in the advertisement shall affect the legality of the sale, or the title conveyed by the treasurer's deed, but the provisions of the chapter shall be sufficient notice to owners of the sale of their property, includes the posting as well as publication of notice of tax sale, required by section 873.

SAME: *Treasurer's certificate or deed.* The provision of Code 1873, section 880, that no irregularity or informality in notice of tax sale shall affect the legality of the sale or the title conveyed by the treasurer's deed, is available to one who holds a certificate merely, as well as to one who holds a tax deed.

*Appeal from Woodbury District Court.*—HON. WILLIAM HUTCHINSON, Judge.

MONDAY, OCTOBER 16, 1899.

ACTION in equity to have certain tax sales declared void, and to enjoin the issuance of deeds thereon. Two grounds are set up as a foundation for the relief asked, viz.: (1) That no proper notice of said sales was given, as required by law; and (2) that, as to a part of the land involved, it was not subject to taxation at the time the assessments were made. The district court held that the sales were invalid for that no legal notice thereof was given, and from this branch of the decree the defendants appeal. It also found the land to be subject to taxation, and from this holding plaintiff appeals. The latter will be recognized here as the appellant. *Affirmed* on plaintiff's appeal, and *reversed* on defendant's appeal.

*T. G. Henderson* and *S. T. Davis* for appellant.

*Hallam & Stevenson* for appellee.

WATERMAN, J.—The facts of this case are stipulated. We set them out as they appear in the agreed abstract of record:

"It is agreed by the plaintiff and defendant, and by their attorneys herein, that the following facts are admitted:

"That the lots described in plaintiff's petition as being in Sioux City West are located on and a part of the northwest quarter (N. W. ¼) of the northwest quarter (N. W. ¼) of section twenty-nine (29), township eighty-nine (89), range forty-seven (47) west of the fifth P. M., and said lots were sold December 3, 1894, for the taxes assessed, 1893, by J. A. Magoun, county treasurer of Woodbury county, Iowa, and tax certificates issued therefor, and they have not been redeemed from said sale; and defendant, J. A. Magoun, Jr., is now, and was at the commencement of this suit, treasurer of said Woodbury county. That the notice of publication of tax sale was published by J. A. Magoun, Jr., county treasurer of Woodbury county, Iowa, in the Sioux City Journal, a weekly newspaper published in Woodbury county, Iowa, three times, the first publication being on the 9th, the second on the 16th, and the third on the 23d day of November, 1894, and the tax sale was made on the 3d day of December, 1894, and this was all and the only publications made in newspapers for said sale. That a copy of said printed notice was posted on or about, and not earlier than, November 8 or 9, 1894, on a bulletin board placed at or near the south door of the court house in Sioux City, Woodbury county, Iowa, which door is one of the three entrances to said court house, all said entrances being of the same size and having wide double doors, and the court house being located in the center of a quarter block, and having a large yard all around it. That said door faces the alley on the south, but has a broad sidewalk leading up to it from the alley, and is one of the doors used by the public as an entrance to said court house, and also the door at which all public sales are held by the sheriff, and at which the sheriff's notices of sale are

posted.    There was no other posting of said notice by the treasurer of the tax sale in this case, except the notice above referred to, nor was it posted at or upon any other door of the court house.

"It is further agreed by the parties hereto:  That Justus Townsend, on the 19th day of July, 1856, filed his pre-emption declaratory statement, and his pre-emption right attached to the northwest quarter (N. W. ¼) of the northwest quarter (N. W. ¼) of section twenty-nine (29), township eighty-nine (89), range forty-seven (47) west of the fifth P. M. in Woodbury county, Iowa; this statement also includ-ing the west half (W.½) of the southwest quarter (S. W.¼) of section twenty (20), in same township (total of 120 acres), —being at that time government land belonging to the United States; and that he made proof and payment therefor with M. L. B. warrant for 120 acres, December 23, 1856. That this pre-emption entry was canceled by the commis-sioner of the general land office at Washington, by letter dated July 7, 1857, of which the following is a copy:

"'General Land Office, July 7th, 1857.  Gentlemen: Pre-emption locations No. 32,012, of the W. ½ of the south W. ¼ of section No. 20, and the N. W. ¼ of the N. W. ¼ of section No. 29, T. 89 N.; R. 47 west, by Justus Townsend, and No. 53,493, of the N. W. ¼ of section No. 27, T. 89, R. 47 West by Thomas L. Griffey, have this day been canceled, for the reason that the land claimed was not, at the date of the respective settlements by pre-emption, viz. 18 and 19 of July, 1856, subject to pre-emption.  The land claimed is within the six-mile limits of the Dubuque and Pacific R. R., and was subject to pre-emption under the act of 15th of May, 1856, making a grant of lands to the state of Iowa in alter-nate sections to aid in the construction of certain railroads in said state, up to the time when the route of said road was definitely fixed.  It appears from the map of said road on file in this office that that part of said road within the limits of which this land is situated was located or definitely

fixed on the 6th day of July, 1856, twelve and thirteen days prior to the respective dates of settlement by pre-emptions. The warrants (Act 1855) are herewith returned, to be delivered to the respective parties on the surrender of his duplicate certificate of location. You will be pleased to notify Mr. Griffey to make the usual application through your office for the return of his purchase money on excess receipt No. 438. Be pleased to note the cancellation on your books and plats. Respectfully, etc. Thomas A. Hendricks, Commissioner. Register and Receiver, Sioux City, Iowa.'

" 'United States Land Office, Des Moines, Iowa. I, F. G. Clarke, register of said U. S. land office, hereby certify the within and foregoing is a true copy of a letter on file in this office, given under my hand this 25th day of March, A. D. 1886. F. G. Clarke, Register of the U. S. Land Office at Des Moines, State of Iowa.'

"And that Townsend, after said cancellation, was tendered and accepted the return of said M. B. L. warrant, and assigned the same, and it was located in 1859 by the assignee on other land.

"It is also agreed that said N. W. ¼ of N. W. ¼ of said section 29 is shown by the records to be within the six-mile limits of the railroad grant to Iowa of May 15, 1856, and the lots described in said petition as being in Sioux City West lie in, and are a part of, said N. W. ¼ of N. W. ¼ of section 29. And the state of Iowa, on July 14, 1856, accepted said congressional grant, and conferred its rights thereto, to the line from Dubuque to Sioux City, on the Dubuque & Pacific Railway Company, and made that company the beneficiary under the grant. And the United States land office, on December 23, 1858, included this forty acres in a certified list of land issued to the state, as of lands inuring to the state under the railroad grant of May 15, 1856. That on July 5, 1871, the state of Iowa issued its patent to the said forty acres, being the said N. W. ¼ of the N. W. ¼ of section 29, to the Iowa Falls & Sioux City Railway Company,

as the railroad company entitled to the lands on said line under said grant. That said land was taxed in 1872, and for subsequent years, down to 1898, to the said railroad company and its subsequent grantees. That plaintiffs, by a chain of title, is the grantee of all the rights of said railroad company in and to the said N. W. ¼ of the N. W. ¼ of section 29, in which the lots described in plaintiff's petition as lying in Sioux City West are located, by deed to him from said company dated April 16, 1884, after which date the said real estate was taxed to plaintiff or his grantees, and in February, 1887, plaintiff became the owner of Justus Townsend's right in said property by special warranty deed from Justus Townsend and wife conveying all the rights of said Townsend therein, and in the year 1893, the year which the lots referred to in plaintiff's petition were taxed, and for which taxes they were sold, the same were assessed to plaintiff and his grantees. That the railroad company, beneficiary of the state, under said grant, on the 5th day of July, 1856, surveyed a part of the line of the road from Dubuque to Sioux City, through said township in which said forty acres is located, including said land within the six-mile limits of said grant, and filed the map of the whole line of said railroad in the United States land office in Washington, October 13, 1856. That Justus Townsend, in 1886, made an application to the United States land department to have his canceled entry reinstated and patent issued to him on the N. W. ¼ of the N. W. ¼ of section 29, township 89, range 47. And the commissioner of the general land office, in the following letter, dated November 11, 1886, granted in part his petition, so far as is therein stated:

" '(F)          Department of the Interior          S. S. M.
              " 'General Land Office.          W. J. D.
              " 'Washington, D. C.,          J. W. L.
              " 'November 11, 1886.          C. M. W.
" 'Register and Receiver, Des Moines,
              Iowa::          R. A.

" 'Gentlemen:· Your letter of July 7th last, transmitting the application of Justus Townsend for the reinstatement of his pre-emption entry of the N. W. Qr. N. W. Qr. Sec. 29, town 89 N., range 47 W., has been received. It is stated in said application that Townsend's entry was canceled, without previous notice to him, for conflict with the grant to the state for the Dubuque and Pacific R. R. Co., by act of May 15th, 1856, and affidavits were submitted therewith, showing residence on the land by him from July 16th, 1856, to the spring of 1859. The application also refers to the case of Thomas L. Griffey, whose entry in the same township was canceled for conflict with the said grant, and subsequently reinstated and patented under the act of April 21, 1876, and asks reinstatement of his entry as to said N. W. Qr. N. W. Qr. section 29. The records show that Townsend filed pre-emption declaratory statement No. 262 for the land, July 19, 1856, and made proof Dec. 23d ensuing, and payment with warrant No. 32,012, 120 acres, act of 1855. The entry was canceled July 7, 1857, the warrant returned to Townsend, reassigned by him to one James Scott, and relocated by Scott at Dakota City, Neb., July 11, 1859. The records show that the tract is · within the six-mile (granted) limits of the railroad grant. The lands within said limits were 'ordered withdrawn by telegram of May 10th, and letter of May 15th, 1856. On June 19th, 1856, the local officers were directed to allow pre-emption settlements and entries of the lands ordered withdrawn until the road should be definitely located. The road opposite the tract in question was surveyed and staked July 5th, 1856, and this was formerly held, under an opinion of Attorney General Cushing of Feb. 16, 1857 (8 Op. 395), to be the definite location of that portion. The map of location of the entire road was filed in this office Oct. 13, 1856, and, under the present rulings of the courts and this department, the date of the filing of said map was the definite location of the road. The lands were again ordered with-

drawn on Oct. 20 and 22, 1856. Therefore, at the date of Townsend's settlement and filing, the land, under the order of June 19, 1856, was subject to settlement and entry under the pre-emption law, and at the date of the definite location of the road the right of pre-emption had attached to the tract, and under the express provisions of the granting act it was excepted and excluded from the grant. It is clear, therefore, that while the entry was canceled in accordance with the rulings in force at the time, said rulings were erroneous, and the cancellation was improper. Again, on March 30, 1877, in Darcy vs. St. Paul and Pac. R. R. the Sec. of the interior decided an entry made during the temporary revocation of a withdrawal was confirmed by the act of April 21, 1876. See, also, secretary's decisions of Jan. 30, 1878, in Cedar Rapids and Mo. Riv. R. R. Co. vs. Colton, and May 9, 1879, in Spencer vs. Bur. & Mo. Riv. R. R. Co. Townsend's case, therefore, comes clearly within the act of April 21, 1876; but the land, as shown by the records, was certified under the railroad grant, Dec. 27, 1858, and under the present rulings of this department, as announced in the case of Wisconsin Central R. R. Co. vs. Stinka (4 L. D. 344), said certification ended its jurisdiction over the tract, and that no second patent could be issued therefor. The secretary, however, allowed Stinka's entry to remain of record, and stated that if the patent to the railroad was for any reason invalid, and the settler injured in any way, the courts were the proper tribunals to adjudicate the matter. No patent can therefore issue to Townsend, but, to the end that he may secure any benefits he may be entitled to under the act of April 21, 1876, his entry is hereby reinstated thereunder; and, should this decision become final, he will be allowed to substitute another warrant for that formerly located, or pay cash for the land. Sixty days are allowed for appeal. Advise the parties in interest of this action. Very respect.,

"'Wm. A. J. Sparks, Commissioner.'.

—"And by said letter allowing him, for the purpose therein stated, to pay for said forty acres, but denying to him the patent therefor and suspending the entry. That under said letter Townsend was permitted to pay for said forty acres, February 2, 1887, and got a receipt for the same. That Townsend again, in 1892, made application to have a patent issue on his suspended entry, and was again refused by the commissioner in the following letter, dated August 24, 1892:

" '(F)          Department of the Interior,          H. O. C.
" '1892—98,882.     Gen. Land Office.          S. S. M.
"  '6—5,935.          Washington, D. C.,          W. C. E.
                    " 'August 24th, 1892.          E. C. S.

"  'Mr. John A. Sibbald, 629 F. St. N. W., Washington, D. C.—Sir: I am in receipt of your letter of Aug. 12th, 1892, calling attention to the decision of the supreme court of the United States in the case of Sioux City and Iowa Falls Town Lot and Land Company vs. Griffey (143 U. S. 32), and asking that patent be issued upon the entry of Justus Townsend, covering the N. W. $\frac{1}{4}$ N. W. $\frac{1}{4}$ Sec. 29, T. 89, R. 47, Iowa. The entry of Townsend which had been previously canceled for conflict with the grant to the Dubuque & Sioux City R. R. Co. was reinstated Dec. 24th, 1886, under the act of April 21st, 1876, but the commissioner declined to issue a patent thereon, for the reason that the title to the land had already been transferred to the state of Iowa for the R. R. Co., and was still outstanding, and he was without authority to do so. Wis. Cen. R. R. Co. vs. Stinka (4 L. D. 344), and cases therein cited; St. Paul, Minneapolis & Manitoba Ry. Co. vs. Evenson (5 L. D. 144); St. Paul, Minneapolis & Manitoba Ry. Co. vs. Vannest (5 L. D. 205). The title to the tract is still outstanding, and there is nothing in the Griffey Case (supra) authorizing the issue of a second patent for the same land. In that case it was held that, the land having been excepted from the railroad grant, the company had no interest therein, and could not be heard to object

to the action of the government in issuing the patent to Griffey. I must accordingly deny your request for the issue of a patent on Townsend's entry.          Very respectfully,

"'I. R. Conwell, Acting Commissioner.'

"That Townsend and wife, by special warranty deed, dated February, 1887, conveyed to plaintiff the said forty acres. That plaintiff, as grantee of said Townsend, under date of March 27, 1897, made another application for patent to Townsend under said suspended entry, and the application was granted by commissioner's letter of April 30, 1897, as follows:

"'(F)     31,409.     1897.

| "'A. G. H. | Department of the Interior, | W. A. C. |
|---|---|---|
|  | "'General Land Office. | W. J. M. |
|  | "'Washington, D. C. | S. S. M. |
|  | "'April 30th, 1897. |  |

"'Samuel T. Davis, Transferee of Justus Townsend, and Vendee Iowa Falls & Sioux City (Formerly Dubuque & Pacific.) R. R. Co. vs. United States. Petition for Patent on Suspended Cash Entry for N. W. ¼ of N. W. ¼ 29, 89 N., 47 W.

"'Register and Receiver, Des Moines, Iowa—Gentlemen: Under date March 27, 1897, Samuel T. Davis, of Sioux City, Iowa, forwarded "Petition and Motion for Patent" (with certified abstract of title attached) and "Brief and Argument of Transferee," and also duplicate receipt of Justus Townsend's cash entry No. 21,627, dated Des Moines, Iowa, Feb. 2d, 1887, for N. W. ¼ of N. W. ¼ Sec. 29, Twp. 89 N., R. 47 W., 5th P. M. The complications of the case, as presented, require a somewhat lengthy preliminary recital, involving also the history of the partly analogous case of Thomas L. Griffey (for the N. W. ¼ 27, 89, 47 W.). By Commissioner Hendricks' letter of July 5th, 1857, preemption locations (with military bounty land warrants) of said Townsend and Griffey were ordered canceled (without notice), for the reason that the land claimed was not, at

date of respective settlements alleged, viz. 18th and 19th of July, 1856, subject to pre-emption. Said letter also stated: "The land claimed is within the six-mile limits of the Dubuque and Pac. R. R., and was subject to pre-emption under the act of 15th May, 1856, making a grant of lands to the state of Iowa, in alternate sections, to aid in the construction of certain railroads in the state, up to the time when the route of said road was definitely fixed. It appears from the map of said road on file in this office that that part of said road, within the limits of which this land is situated, was located or definitely fixed on the 6th day of July, 1856, twelve or thirteen days prior to the respective dates of settlement by pre-emptions. The warrants (Act 1855) are herewith returned, to be delivered to the respective parties on the surrender of his duplicate certificate of location. Be pleased to note the cancellation on your book and plats." It should be here remarked that the declaratory statements of Townsend and Griffey, D. S. 262 and D. S. 263, filed, respectively, July 19, 1856 (Sioux City Series), have not been noted as canceled on tract books relating to land described thereby of this office; they, therefore, are of record at this time. It should also be noted that Townsend's filing was for W. ½ of S. W. ¼ Sec. 20, and N. W. ¼ of N. W. ¼ 29, 89, 47, 120 acres, and his warrant 32,012, for 120 acres, located the same; the certificate of location of which was canceled as shown. The N. W. ¼ of N. W. ¼ of section 29, in Townsend's entry, and the N. W. ¼ section 27, 89, 47, in Griffey's entry, were certified to the state of Iowa, December 28th, 1858, for said Dubuque & Pac. (subsequently the Iowa Falls and Sioux City) R. R. Co.

"'And it here becomes of interest to trace out the result of this action in Griffey's case, because of what follows herein. Griffey's canceled warrant location, notwithstanding this said certification of the lands involved therein, was reinstated and approved for patent, letter "F," June 28,

1882, under Secretary Teller's order of June 13th, 1882, who, affirming decision of this office (Sept. 8, 1880), found: "The facts, in my opinion, bring the case clearly within the provisions of the act of April 21st, 1876, which is both remedial and mandatory in its character, and Griffey's entry is confirmed by the first section of said act." The subsequent result of this patenting the land to Griffey is set forth in case Sioux City and Iowa Falls Town Lot and Land Company vs. Griffey, Oct. term, 1891, U. S. Reps., vol. 143, page 132, where the supreme court of the United States affirmed the judgment of the supreme court of Iowa in favor of Griffey. The case of Townsend, however, fell under a different line of action, as set forth in office letter "F," Nov. 11th, 1886, wherein it appears that Townsend, referring to the Griffey case, applied for reinstatement of his entry as to the land now in controversy, to wit, the N. W. ¼ of the N. W. ¼ 29, 89, 47; for it appears his former entry (location) was for 120 acres, and on cancellation of certificate, as shown, the warrant was returned to him, was reassigned by him to one James Stott, and relocated by Stott at Dakota City, Nebraska, July 11th, 1859, and patent thereon for 120 acres issued Sept. 1st, 1860. On Townsend's application for reinstatement as then presented, said letter "F," Nov. 11th, 1886, found, inter alia: "The road opposite the tract in question was surveyed and staked July 5th, 1856, and this was formerly held under an opinion of Attorney General Cushing, of Feb. 16th, 1857 (8 Op. 395), to be the definite location of that portion. The map of location of the entire road was filed in this office, Oct. 13th, 1856, and, under present rulings of the courts and this department, the date of the filing of said map was the definite location of the road. The lands were again ordered withdrawn on Oct. 20th and 22d, 1856. Therefore, at the date of Townsend's settlement and filing, the land, under the order of June 19th, 1856, was subject to settlement and entry under the pre-emption law, and at

the date of the definite location of the road the right of pre-
emption had attached to the tract, and, under the express
provision of the granting act, it was excepted and excluded
from the grant. It is clear, therefore, that, while the entry
was canceled in accordance with the rulings in force at the
time, said rulings were erroneous, and the cancellation was
improper." Said letter "F," after citing certain depart-
mental decisions to the effect that entries made during the
temporary revocation of a withdrawal were confirmed by
the act of April 21st, 1876, concluded as follows: "Town-
send's case, therefore, comes clearly within the act of April
21st, 1876, but the land, as shown by the records, was cer-
tified under the railroad grant, Dec. 28th, 1858; and under
the present rulings of this department, as announced in the
case of Wisconsin Central R. R. Co. vs. Stinka (4 L. D.
344), said certification ended its jurisdiction over the tract,
and no second patent could issue therefor. The secretary,
however, allowed Stinka's entry to remain of record, and
stated that if the patent to the railroad was for any reason
invalid, and the settler injured in any way, the courts were
the proper tribunals to adjudicate the matter. No patent
can therefore issue to Townsend, but, to the end that he
may secure any benefits he may be entitled to under the
act of April 21st, 1876, his entry is hereby reinstated there-
under, and, should this decision become final, he will be
allowed to substitute another warrant for that formerly
located or pay cash for the land. Sixty days are allowed
for appeal."

"It also appears your office was advised ("F," Dec.
24th, 1886) that the company's resident attorneys and
Samuel T. Davis having withdrawn their appeal from above-
mentioned decision, that the appeal was dismissed, and said
decision had become final, and Mr. Townsend will be per-
mitted to pay cash for the land at the rate of $1.25 per
acre; whereupon your office issued final certificate and
receipt cash entry No. 21,627, Feb. 2d, 1887, for the N.

W. ¼ N. W. ¼ Sec. 29, T. 89, R. 47, to said Townsend, and
the said cash entry No. 21,627 has remained suspended
to this time. In case as now presented, Mr. Samuel T.
Davis alleges he is grantee in the deeds from Justus Town-
send, "set forth in the accompanying abstract, dated Aug.
17th, 1885, and Feb. 18th, 1887, and I then and there
became the sole and absolute owner of his equitable interest
therein"; that he bought Townsend's interest in said N.
W. ¼ N. W. ¼ Sec. 29, 89 N., 47 W., "after I had found
that my title, which I had purchased for a valuable con-
sideration from the grantees under the R. R. act (also shown
in said abstract), was, under the decisions of the state and
national courts in similar cases, null and void." Said abstract
shows Samuel T. Davis acquired title to the N. W. ¼ N. W.
¼ Sect. 29, 89 N., 47 W., from the company, through sev-
eral mesne conveyances, by warranty deed dated April 16th,
1884, prior to his above-mentioned purchase of equitable
interest of Justus Townsend. It is urged: That the claim
of Townsend has already been allowed under the act of
April 21st, 1876, which the secretary has held (in the Grif-
fey Case) was "both remedial and mandatory in its charac-
ter" (above). That "the land, therefore, did not pass under
the railroad grant" (supreme court decision in the Griffey
Case, above). That the Stinka Case ruling does not apply,
both because it was "patent" in that case, and "certification"
in this; and because, under the act of Aug. 3d, 1854 (10
Stat. 346), under which certification is practiced, it is
expressly provided that, where lands designated in such lists
(and certifications) "are not of the character embraced by
such acts of congress, and are not intended to be granted
thereby, said lists, so far as these lands are concerned, shall
be perfectly null and void, and no right, title, claim, or
interest shall be conveyed thereby," and a void deed is no
deed (see case English & L. L. & G. R. R. Co., 23 L. D.
343). That the granting act (May 15th, 1856; 11 Stat.

9) was a grant in praesenti, and only granted lands which
inured thereunder when the line or route of said road was
definitely fixed. Therefore Townsend's right to patent was
clearly and exclusively established by the act of April 21st,
1876, when the commissioner's finding of Nov. 11th, 1886,
became final, as already shown. That, in addition to all
the foregoing, if there had been no law of 1876, Townsend
had a perfect means of relief under the third section of the
act of March 3d, 1887 (24 Stat. 556), where it is provided
that, if the pre-emption entry of any bona fide settler has been
erroneously canceled on account of any R. R. grant, such
settler, "upon application, shall be reinstated in all his
rights and allowed to perfect his entry by complying with
the public land laws," and the remedial and mandatory
effects of this statute accrue to Townsend, as directly and
explicitly as if it had named his case as one to be governed
by it. That Townsend's case is also under the provisions
of sec. 7 act of March 3d, 1891 (26 Stat. 1095). That
Townsend is entitled to a patent." That the land was sold
prior to March 1st, 1888, to petitioner, by Townsend, and
after final entry. Finally, the petitioner waives, as grantee
from the Co. (under granting act of May 15th, 1856), all
objections to the issuing of patent to the entry man, and
expressly waives notice or any other rights he might have
before the department on this application that would pre-
vent the issuance of said patent. And he further states
that no remedy in the courts is left him by which he can
obtain the legal title, for the reason that he is not allowed
to sue himself, and, the legal title being in the United
States, he cannot sue the government therefor; that he can
only bring suit to protect his equitable title when the legal
title passes from the United States, and not before, and it
is impossible to thus (by suit) transfer a title which is yet
in the United States. (*Marquis v. Frisbie,* 101 U. S.
476; *Johnson v. Townley,* 80 U. S. 485; and *Shipley v.
Cowan,* 91 U. S. 330.)

" 'From a careful consideration of all the foregoing, I am of the opinion that the petitioner is entitled to the relief sought; that, although all titles and claims to this land appear as merged in the petitioner, he has failed, after several attempts, to secure an unclouded title, through no fault of his; that the government, after consideration received and acknowledged, after declaring the claim of Townsend as perfectly established, has, for insufficient reasons, hesitated to deliver the thing purchased, and is now confronted with the remedial and mandatory terms of the laws cited. Moreover, I find the present claimant, waiving all rights under the granting act, elects to seek his remedy under existing laws prior to the act of March 2d, 1896 (29 Stat. 42). Said act cannot be utilized in present instance, for that reason also because of Townsend's entry of record, with its attending circumstances. Notwithstanding present claimant's waiver, as vendee of the company, of notice, sixty days from notice hereof will be allowed the Iowa Falls and Sioux City (formerly Dub. & Pac.) R. R. Co. within which to file an appeal herefrom, and Messrs. Burdette, Thompson & Law, resident attorneys for the company, will be advised hereof by this office, in letters of current date. You will advise petitioner hereof, and furnish him with a copy of this letter.

" 'Respectfully,

" 'Binger Hermann, Commissioner.'

"That patent to Townsend was finally issued October 25, 1897, as ordered in said letter, and recorded in the records of Woodbury county, Iowa, November 8, 1897. That Samuel T. Davis, plaintiff herein, is the owner in fee of the lots described in plaintiff's petition, and that the said N. W. ¼ of the N. W. ¼ of 29, 89, 47, herein described, was platted and laid out into lots, blocks, streets, and alleys as an addition to Sioux City, Iowa, on the 2d day of May, 1884, by plaintiff herein, by plat duly and properly executed and filed with the recorder of Wood-

bury county, Iowa, the name given to said addition being 'Sioux City West'; and said real estate lies inside of the mile and a half limit from the center of Sioux City, and prior to 1893 a number of the streets were graded through said property, and a number of the lots were sold, graded, and built upon by certain persons, to whom plaintiff had sold said lots for homes, and said property was at that time, and is now, within the residence portion of the city of Sioux City, and is occupied by a number of persons, grantees of plaintiff, who have purchased said lots for residence thereon; and the Sioux City Electric Street-Car line was, in 1893, and is yet, operating its electric car line upon one of the streets through said addition, for the use and accommodation of persons living in that vicinity in going to and from the business portion of the town."

II. This case has been most exhaustively argued by counsel. We do not find it necessary to follow, in this opinion, exactly the line of discussion pursued. Many of the propotions relied upon by appellant, and in support of which numerous authorities are cited, we are quite willing to concede. Taking up, first, that branch of the case which appellant brings into this court, we will address ourselves to the question, was the property in Sioux City West subject to taxation at the time this assessment was made? It will be noted that these lots are located in the N. W. N. W. 29, 89, 47 W., and that the title to this 40 has two branches, which unite in plaintiff. It will, perhaps, conduce to a clearer understanding of the case to give a brief synopsis of these chains of title separately.

Justus Townsend, on the 19th day of July, 1856, preempted this tract. This entry was canceled July 7, 1857. In 1886, Townsend applied to have his pre-emption entry reinstated. In November of that year this request was granted, so far as to reinstate his entry, subject to a further hearing, but notice was given that no patent would issue under then existing circumstances. On February 2, 1887,

Townsend paid cash for the land, and took a receipt for the payment. Townsend, in 1892, again applied for a patent, and was again refused. The ground for this refusal was that there was an outstanding patent to the state of Iowa therefor. In February, 1887, Townsend conveyed all his rights to plaintiff. March 27, 1897, plaintiff, as grantee of Townsend, applied for a patent, and the application was granted, and the patent duly issued. The other chain of title is as follows: This land was within the limit of a railroad grant made by the United States to the state of Iowa, May 15, 1856. On July 14, 1856, the state accepted the grant, and conferred its rights upon the Dubuque & Pacific Railroad Company. July 5, 1856, the railroad company staked its line through the township in which this land is located, but did not file a map of its line with the proper authorities in Washington until after Townsend had pre-empted the land. December 23, 1858, this tract was included in a certified list issued by the United States land office to the state of Iowa as lands covered by the grant of May 15, 1856. On July 5, 1871, the state issued its patent to this tract to the railway company. In 1884, plaintiff obtained title from the railway company. When Townsend's entry was reinstated, in 1886, the railway company, and plaintiff, as its grantee, appealed from the ruling, but the appeal was afterwards withdrawn.

III. Some legal propositions, which are claimed to have a bearing on the case, are not, and indeed could not consistently be, disputed. If this tract was a part of the public domain at the time this assessment was made, it was not subject to taxation. *Van Brocklin v. State of Tennessee,* 117 U. S. 151 (6 Sup. Ct. Rep. 670); Code Iowa 1873, section 797; *Reynolds v. Plymouth County,* 55 Iowa, 92. The railway grant was subject to pre-emption rights, which had already attached. Townsend's claim under his original entry was superior to the railway title. *Land Co. v. Griffey,* 72 Iowa, 507; *Id.,* 143 U. S. 32 (12 Sup. Ct. Rep. 362).

Further, it must be admitted that, if the cancellation of Townsend's certificate had been made for the purpose of preventing the passing of a permanent title out of the government, the land would have reverted to, and become a part of, the public domain. *Railroad Co. v. Whitney,* 132 U. S. 357, 366 (10 Sup. Ct. Rep. 112); *Railway Co. v. Dunmeyer,* 113 U. S. 629 (5 Sup. Ct. Rep. 566); *Keane v. Brygger,* 160 U. S. (276, 16 Sup. Ct. Rep. 278).

Appellant, relying upon these propositions, takes up each chain of title separately, and attempts to show that this land was a part of the public domain when the tax complained of was assessed and levied. We think, however, that the situation is quite clearly disclosed, if we now consider both chains of title together. The government recognized the title as passing from it in the year 1856. There was a conflict as to whether it went to Townsend or to the railway company, but never a question but that all claim to the land by the United States ceased at that time. If it had been in dispute as to whether title had passed from the government, it is likely true, as held in cases cited by appellant, that the land would not be taxable until the patent issued; but that is not the fact. The only doubt here disclosed is as to which one of the two grantees was invested with ownership. We do not lose sight of the fact that Townsend's original entry was canceled; but this was done only because it was thought the land had passed by the railway grant, and not because of any desire on the part of the government to retain or claim title. This is clearly shown by the fact that Townsend's entry was reinstated in 1886, and in 1887 he was allowed to purchase the land thereunder. This was not a second entry of the land by Townsend. His old entry was recognized and reinstated. We do not allow any weight to the statement of the commissioner of the general land office that no patent would issue to Townsend until his claim had been judicially established. His right to his original entry was recognized. This

right has since been confirmed. From that time, at least,—
that is, from the date of the reinstatement of his entry,—
Townsend became and was the equitable owner of the land.
The land was therefore taxable, after that date. *Barrett v.
Kevane,* 100 Iowa, 653; *Whitehead v. Plummer,* 76 Iowa,
181; *Goodnow v. Wells,* 67 Iowa, 659; *Land Co. v. Fitch-
patrick,* 52 Iowa, 244; *Railroad Co. v. Carroll County,* 41
Iowa, 153; *Land Co. v. Davis,* 102 Iowa, 128; *Witherspoon
v. Duncan,* 4 Wall. 216.

The submission by Townsend to the cancellation of
his original entry and the relocation of the warrant did not
amount to a voluntary surrender of his rights. His sub-
sequent conduct and that of the government shows
that neither so treated his acts in these particulars.

There is no equity in plaintiff's case. He has made
claim of title to this tract of land for many years. Long before
this tax was assessed he laid it out into lots and blocks as
an addition to the city, procured streets to be graded through
it, and sold a number of the lots. To avoid payment of
his just burden of taxation, he is now seeking to disclaim
an ownership which he for years avowed. We are by no
means inclined to aid him in his efforts in this direction,
unless compelled to do so by the strict mandate of the law;
and, as we have attempted to show, the law does not sup-
port the case he makes on this branch of the controversy.

IV. It is claimed on the part of defendant that the
court erred in holding that proper notice was not given of
the tax sale. The statute with relation to notice,
after providing for what such notice shall contain,
proceeds as follows:

"Sec. 873. The county treasurer shall give such notice
by causing the same to be published once each week for
three consecutive weeks, the last publication to be at least
one week prior to the day of sale, in some newspaper printed
in such county, if such there be, or if not, then in the nearest
newspaper in this state having a general circulation in such

county; and also by causing a copy of such notice to be posted on the door of the county court house, at least four weeks before the day of sale." Code 1873.

The notice in question was published in a proper newspaper on the 9th, 16th, and 23d days of November, and the sale was on December 3d following. It is enough for us to say that we think this publication was in strict compliance with the law. It was made once each week, for three consecutive weeks, and the last publication was "at least one week prior to the day of sale."

But it is also insisted that the required posting of the notice was not had. This notice was posted on one of the outer doors of the court house in Woodbury county, not earlier than November 8th or 9th, manifestly less than four weeks prior to the sale, and it is contended that for this failure the sale should be set aside. Section 880, Code 1873, contains this provision: "And no irregularity or informality in the advertisement shall affect in any manner the legality of the sale, or the title to any real property conveyed by the treasurer's deed under this chapter, but in all cases the provisions of this chapter shall be sufficient notice to owners of the sale of their property." The terms of this section, its context in the chapter, and the obvious purpose of the provision, all indicate that the word "advertisement" is synonymous with "notice," and that it is meant to include both the publication and the posting. See *Allen v. Armstrong,* 16 Iowa, 508, as sustaining this view. But it is claimed that the provisions of the last section are to be taken and applied in favor of the holder of a tax deed only; that a mere certificate holder can get no benefit therefrom; that, as against him, the want of proper notice can be set up. We see no good reason for this attempted distinction. The statute says that the irregularity in the notice shall affect neither the sale or deed. If plaintiff's contention is correct, it would have been enough to say that it should not affect the deed. Furthermore, if

plaintiff is right, the closing paragraph of the section cannot be given the force or meaning which its language should properly bear. While it is true that the decisions under this section have been in cases where tax deeds had issued, yet the principles announced apply equally in favor of certificate holders. In *Shawler v. Johnson*, 52 Iowa, 472, it is said: "The delinquent was bound to know that the taxes on his land had not been paid. The law notified him that all delinquent lands were offered for sale. He cannot shield himself from the consequences of his neglect merely from the fact that the published notice did not contain the land in question." See, also, *Allen v. Armstrong, supra; Madson v. Sexton,* 37 Iowa, 563; *Hurley v. Powell,* 31 Iowa, 64. The conclusion at which we arrive is that the notice provided for is not jurisdictional; that, as the legislature could dispense with all notice save that given by the law itself, it could provide that the failure to give such other notice shall not affect the regularity of the sale; and this it has done. On plaintiff's appeal the judgment is affirmed, and on defendant's appeal it is REVERSED.