### JOHN WILSON & another *vs.* CITY OF CAMBRIDGE.

A school committee of a city caused to be printed an address by them to the people of the city regarding an occurrence in the public schools, and referred to such address in their subsequently printed annual report as a part thereof. *Held*, that they were authorized to charge the expense of printing the address upon the city, by the Gen. Sts. *c.* 40, § 6, directing them to make annually a report of the condition of the schools and cause it to be printed for the use of the inhabitants.

CONTRACT to recover for printing four thousand copies of an " Address to the people of Cambridge from the school committee, concerning a recent case of corporal punishment in the Allston Grammar School."

At the trial in the superior court, before *Wilkinson*, J., without a jury, it appeared that the printing was done by the plaintiffs as alleged, at the request of the school committee, claiming to act on behalf of the city, and the price charged was fair and reasonable; that the address, when printed, was circulated among the inhabitants of the city by the school committee, and afterwards, when the committee had made and printed their annual report, some of the printed copies of the address and report were united and made into one pamphlet, and circulated among the inhabitants by the committee in that condition ; and that the printing was charged to the city by direction of the committee, and a bill therefor, approved by the committee, was duly presented, and a demand for payment made upon and refused by the city. It was admitted that the school committee, in causing this printing to be done, acted in good faith, and that, if they were by law invested with discretionary power in the premises, they properly exercised it in the present case. The committee in their annual report referred to the address as part of the report.

The judge found for the defendants, and reported the case to this court.

*J. D. Thompson,* for the plaintiffs.

*T. H. Sweetser & J. A. Jacobs,* for the defendants.

CHAPMAN, C. J.   By Gen. Sts. *c.* 38, § 16, school committees are to have the general charge and superintendence of all the public schools in town.   By § 11, they are to use their best endeavors that all the children shall regularly attend school.   By *c.* 40, § 6, they are to make annually a detailed report of the condition of the several public schools, which report shall contain such statements and suggestions in relation to the schools as the committee deem necessary or proper to promote the interests thereof.   It is to be printed for the use of the inhabitants, in octavo, pamphlet form, &c., and two copies are to be sent to the board of education, and one is to be deposited with the clerk of the town or city.   These provisions are to be construed with reference to the object to be accomplished.   That object is the universal education of the people, and the maintenance of free public schools as necessary instruments for its accomplishment.   All the people are interested in these schools, and ought to be kept fully informed in respect to their condition and in respect to the best methods of securing their efficiency and improvement.   This is a prominent reason for requiring the committee to make an annual report, and printing it for the use of the inhabitants.   The statute prescribes the form in which it is to be printed, but does not limit the length of it.   This is left to the discretion of the committee.   Nor does it require that the whole of it shall be prepared and published at the same time.   If there are statements or suggestions which the committee think it important to circulate among the inhabitants without delay, there is nothing in the letter or spirit of the statute which forbids them to do this before the whole of the report is published or prepared.   When the whole is finished the different portions may properly be published together.   There is no limitation to the discretion of the committee except the implied limitation of good faith.

In the present case an occurrence in one of the schools excited much attention and interest. Many of the inhabitants took an active part in the matter, as they had a right to do. It would not be strange if much misapprehension should exist in regard to the facts, and if crude notions should prevail very extensively in regard to the duty of the committee and of teachers in the schools, and if excitement and disturbance should prevail to such an extent as to imperil the best interest of many of the schools in the city. However this might be, if the committee in good faith, believing that a publication of the facts in their annual report would be proper, and that the information, with proper suggestions in regard to the matter, ought to be speedily published, should decide to make the publication, they had authority under the statute to do so. It seems they treated it as a part of their annual report, by sending copies to the secretary of the board of education and circulating it with the report and as a part of it.

It is stated in the report of the case, that in causing the printing to be done the committee acted in good faith; and that, if they were by law invested with discretionary power, the power was properly exercised. We think they had such discretionary power by a just construction of the section which authorizes them to make an annual report ; and therefore we have no occasion to discuss the more general provisions above referred to, except for the purpose of aiding us in construing that section. They show that the purposes of the legislature in requiring the report to be prepared, printed, published, and furnished to the secretary of the board of education, were very broad.

*New trial ordered*