THWEATT et al. vs. BLACK, ex'r, etc.

1. EVIDENCE: *Recitals of tax deed, etc.*
   The recitals of a tax deed will be taken as true, unless disproved by competent evidence. When the deed is attacked the original record of the sale is a higher grade of evidence than the deposition of the auditor as to the contents of a certified copy filed in his office by the county clerk.

2. TAX SALE: *Advertisement prerequisite, etc.*
   An advertisement is essential to the authority of the collector to sell delinquent land, but mere informalities or unimportant variances from the law will not vitiate.

3. SAME: An erroneous advertisement of land for the taxes of three years, where only the taxes for one year were due, will not vitiate if the mistake was discovered and the land was sold for only the taxes that were due.

4. ————: *Redemption.   Tender, etc.*
   Where the certificate of a tax sale is assigned, a tender of the redemption money to the assignee is good; but after the expiration of the time prescribed by the statute for redeeming, no waiver, or anything short of an acceptance of the redemption money, will make it good.

APPEAL from *Monroe* Circuit Court in Chancery.

Hon. W. H. H. CLAYTON, Circuit Judge.

*Wassell & Moore, Horner,* and *P. O. Thweat* for appellants.

No deed was tendered before the announcement of the suit. This was fatal. *Lewis* v. *Davis,* 21 Ark., 239.

Thweatt et al. vs. Black, ex'r, etc.

The tax deed is proof of its recitals, and of the regularity and legality of the sale. Gould's Digest, ch. 148, sec. 130; 24 Ark., 460. This, with the sales-book, shows the land sold for taxes of '67 alone.

An answer must be taken as true, not contradicted by two witnesses, or one with corroborating circumstances. *Cummins* v. *Harrell*, 6 Ark., 308; *Menifee* v. *Menifee*, 8 ib., 10.

As against the occupants, the action should have been by ejectment. Their tax deed at least was a cloud. *Miller* v. *Heiman and wife*, 27 Ark., 234; *Chaplin* v. *Holmes*, ib., 414.

*Hughes*, for appellee.

Insisted that the land was erroneously sold for taxes for three years. Bl. on Tax T., 3d ed., ch. 26; 21 Ark., 154–55. Payment may be proved by oral evidence. Bl. on T. T., *417; *Peterson* v. *Gresham*, 25 Ark., 381; *Conway* v. *State Bank*, 13 ib., 48.

A tax deed is not conclusive. *Pillow* v. *Roberts*, 13 How., 472; *Avermun* v. *Parker*, 18 ib.; 20 Ark., 284 and 114; 15 ib., 363.

The record of the sale is the best evidence. *Blight* v. *Banks*, 6 Mon., 206.

All the proceedings in a tax sale must correspond and agree, each with the one preceding, or it is invalid. Bl. on Tax T., *392, 231; *Pitkin* v. *Yaw*, 13 Ill., 251. The sale, if for '67 alone, did not conform to the assessment and advertisement. Gould's Digest, ch. 148, secs. 115–16; *Alexander* v. *Pitts*, 7 Cush., 503; *Corp. of Washington* v. *Pratt*, 8 Wheat., 681; *Bettison* v. *Budd*, 21 Ark., 578. Ministerial officers have no right to correct the record. Bl. on T. T., ch. 21, *passim*.

Reasonable grounds to presume errors in the proceedings shift the onus of proof on to the holder of the tax deed. *Dalton* v. *Fenn*, 40 Mo., 109.

An offer to produce money, if dispensed with, is a tender. *Wicks* v. *Breton*, 4 Ark., 285; 2 Gr. Ev., sec. 603.

Redemption laws liberally construed. Bl. on T. T., * 425, 429, 430. Tax sales strictly. *Burnell* v. *Roane*, 20 Ark., 114; *Hagin* v. *Brashear*, 13 ib., 250; *Hunt* v. *McFadgin*, 20 ib., 284; *Gossett* v. *Kent*, 19 ib., 611; *Budd* v. *Bettison*, 21 ib., 584.

Recitals defective. Do not show the sheriff filed affidavit as collector (Gould, ch. 148, sec. 8); or his bond (sec. 52), or the year for which the lands were assessed; or that the assessment list was filed in time (secs. 34, 35, 36, 37); or that it was adjusted by the County Court (secs. 37, 38); or that the tax book came to collector's hands (secs. 46 and 50). So there was neither judgment nor execution. 19 Ark., 609; 21 ib., 581.

This is not an action for recovery or possession of land. *Chaplin* v. *Holmes*, 27 Ark., 217.

ENGLISH, CH. J.:

Bill filed in Monroe Circuit Court, 5th January, 1870, to enforce vendor's lien and set aside tax deed.

The bill was filed by Ezekiel Black, executor of Wm. Walker, deceased, against Wm. F. Brannon, Peter O. Thweatt, Charner T. Scaife, James R. Graham, Thomas J. G. Goode, and Parker C. Ewan, assignee of Wm. F. Brannon in bankruptcy.

The substance of the bill is, that on the 31st day of October, 1866, plaintiff Black, as executor of Walker, under directions of the will of his testator, sold to defendant Brannon, for $2800, the southwest quarter of section 9, township 1, south range 2 west, in Monroe county, of which $700 were paid in cash, and for the balance three writings obligatory, taken for $700 cash, first due 1st January, 1868, second due 1st January, 1869, and third 1st January, 1870, bearing ten per cent interest, and bond given to make a deed on payment of the obligations. That Brannon had paid nothing on the obligations, had been adjudged a bankrupt, and defendant Ewan appointed his assignee.

That on the 9th of March, 1868, the land was sold by the collector of Monroe county for the taxes of 1865, 1866 and 1867, when the taxes for the first two years named had been paid; that the defendant Thweatt purchased the land at the tax sale, took a certificate of purchase from the collector, afterwards assigned it to defendants Scaife and Graham, who obtained a deed from the collector, etc., and that defendant Goode was an occupant of the land.

The bill also alleged an offer to redeem, and tender of the redemption money, etc.

The cause was heard upon the original and amended bill, the answers of Thweatt, Scaife and Graham, exhibits, depositions, etc., and the court decreed that the tax sale was irregular and void, and condemned the land to be sold to satisfy the balance of purchase money ascertained to be due to plaintiff from Brannon.

Thweatt, Scaife and Graham appealed.

The only questions properly arising upon this appeal are, *first*, was the tax sale shown by the appellee to be invalid? and, *second*, did he prove a tender of the redemption money as alleged?

*First(a)*—The bill specifically attacks the tax sale on no other ground than that the land was sold for the taxes of 1865, 1866, and 1867, when the taxes for the last year only were unpaid.

The answers deny and put in issue the allegation of the bill that the land was sold for the taxes of the three years, or any other than the year 1867. The burden of proof was on the appellee.

The land was assessed and sold under the provisions of Gould's Digest, chapter 148.

The certificate of purchase made to Thweatt, by the Collector, bearing date of 9th of March, 1868, the day of sale, recites that the land was sold for the sum of $8.42, being the aggregate amount of the State, county and special taxes, penalty and charges due thereon for the year 1867.

The certificate was assigned by Thweatt to Scaife and Graham 18th of December, 1868. The sale was made by Carlton, Collector, and on the 15th day of May, 1869, Wilson, his successor in the office, executed a tax deed to Scaife and Graham, which recites that the land was sold for the. taxes, penalty and charges due thereon for the year 1867, amounting to $8.42. A deed was also afterwards made to them by the County Clerk, containing similar recitals.

The tax deed appearing to be regular and valid upon its face, its recital that the land was sold for the taxes, etc., due thereon for the year 1867, must be taken as true unless disproved by competent evidence on the part of the appellee, who attacked and sought to overturn the deed. *Hunt* v. *McFadger*, 20 Ark., 284, and cases cited. Gould's Digest, sec. 130, ch. 148.

The appellee took the deposition of Carlton, the collector, who made the sale. He deposed that the taxes were paid upon the land for 1865 and 1866, but were not paid for 1867. That the land was advertised to be sold for the taxes of 1865, 1866 and 1867, but he could not state positively whether he offered it for sale for the taxes of the three years, or for the taxes of 1867 only.

The appellee propounded special interrogatories to be answered by Thweatt to the fourth of which (relating to the sale) he responded: "My recollection is that I purchased the land for the tax of 1867 alone, and paid $8.42 and received no other certificate than the one upon which the deed was executed."

The appellee took the deposition of Jas. R. Berry, Auditor of the State, (10th May, 1870), who deposed that he had in his office, and had examined a certified copy of the record of the sales of lands for taxes made in Monroe county on the second Monday of March, 1868, from which it appeared that the tract in question was sold for the taxes, etc., of 1865, 1866 and 1867, and purchased by Thweatt.

The appellees produced the original record (sale book) kept by the clerk who attended the sale (Gould's Digest ch. 148, section 123,) from which it appears that the land in question was credited with the taxes for 1865 and 1866, and noted as sold to Thweatt for the taxes, etc., of 1867.

The original record of the sale, was of a higher grade of evidence than the deposition of the Auditor who testified as to the contents of a certified copy, sent to his office by the county clerk.

The weight of the evidence produced at the hearing, taking it altogether, is against the truth of the allegation of the bill (denied by the answers), that the land was sold for the taxes of 1865, 1866 and 1867.

(b)  It was insisted here for the appellee, however, that the sale was void, because the land was advertised to be sold for the taxes, etc., of 1865, 1866 and 1867, though sold for the year 1867 only, which remained unpaid to the time of the sale.

It appears from the assessment rolls and tax book produced at the hearing, that the land was assessed and taxed for 1865, in the name of William Walker, deceased, upon a valuation of $480 and the taxes paid.

That for the year 1866, it, with another tract, was assessed and taxed in the same name, both tracts being valued at $700, and the taxes paid.

That in the year 1867, the tract in controversy was assessed in the name of Malcome McNeil, a non-resident, for that and the two preceding years, at a valuation of $320 and charged upon the tax book, for the three years with $8 dollars State tax, $4.80 county tax, and $4.36 special tax, and advertised for sale by the collector, for the taxes of the three years, as charged upon the tax book in his hands, with a penalty of $4.26 added.

It is to be inferred from facts in evidence, that before the sale by some means, it was brought to the notice of the collector, that

the taxes had been paid upon the land for the years 1865 and 1866, and that he sold the land for the taxes, penalty, etc., properly charged upon it for the year 1867 only.

The land was doubtless put upon the assessment list in 1867 for the three years under section 32, chapter 148, Gould's Digest, the assessor overlooking the fact, it may be supposed, (as it was not shown that he acted corruptly) that the land had been listed and the taxes paid for the two previous years.

Such mistakes have no doubt frequently occurred in the listing of lands, and the error has gone on to the tax book and into the advertisement of the collector, as in this case, and when the mistake has been carried into the sale (as in *Kinsworthy et al.* v. *Mitchell and Wife*, 21 Ark., 154,) it has been held to be fatal.

But here the error stopped short of the sale, though it went into the advertisement.

No wrong was done the appellee in the sale. Can it be imagined that he was deprived of any substantial right, or suffered any material injury by such an error in the advertisement?

His counsel insist that when the error was discovered the sale should have been postponed, and the land readvertised at some future time.

If this be so, the sale would have to be postponed in every case where lands are advertised for the taxes of several years, and it is made known to the collector before the sale that the tax has been paid for any one of the years, though the land owner neglect or refuse to pay, for an unpaid year, which might result in public inconvenience.

Section 131, chapter 148, Gould's Digest, provided that: "No exception shall be taken to any deed made by a collector for lands sold for the payment of taxes, but such as shall apply to the real merits of the case, and are consistent with a liberal and fair interpretation of the intention of the General Assembly."

In *Scott et al.* v. *Watkins*, 22 Ark., 561, the items of the State and county taxes were transposed in the advertisement, and the court said : "To hold the forfeiture of the land to the State void for an error in the advertisement so immaterial and harmless in its character, as the one in question, would be a departure from the rule of interpretation funished by the statute (copied above) and which the court has repeatedly approved and followed."

The object of the advertisement is two-fold : *First*—To notify the owners of the land, or persons having an interest in it, or charged with the duty of paying the taxes upon it, that the taxes are unpaid, and that the land will be sold for the taxes unless paid before the sale; and, second, to bring together competing bidders at the sale, etc.   The advertisement is a prerequisite to the authority of the officer to sell, and must be made in accordance with the requirements of the law, but " mere informalities or unimportant variances in an attempt to comply with the law may not be fatal, but variances in substance cannot be over-looked."   Cooley on Taxation, 335.

When the land in this case was advertised, had the appellee, who, as executor, was charged with the duty of seeing that the taxes were paid, and his lien for purchase money preserved, gone to the collector and paid or tendered the taxes, etc., charged upon the land for the year 1867, no valid sale could have been made. And he had the right to redeem after the sale, within the time prescribed by law, by paying or making a lawful tender to the purchaser, or his assignees, of the sum of redemption money prescribed by law.

But, according to his own showing, he paid the taxes for the years 1865 and 1866, but after he sold the land to Brannon, supposing that he would pay the future taxes, as it was his duty to do, appellee paid no attention to the matter until after he was informed that the land had been sold for taxes.   But for this inattention of appellee, the land would not have been sold for the

small sum charged upon it for the year 1867, and this litigation would have been prevented.

In *Alexander* v. *Pitts*, 7 Cushing (Mass.), 503, the tax assessed upon the land was $3.30, and the advertisement stated the tax to be $4.12, but the collector in fact sold (as he testified) to satisfy the tax of $3.30 and his fees, but the court held that the variance between the advertisement and the assessment was fatal under the statute regulating tax sales.

This is a very rigid case, more strict than our decisions have been under our statutes above indicated.

In that case, however, there was a variance between the assessment and the advertisement in the amount of the tax, while, in this, the advertisement followed and corresponded with the assessment. The advertisement was in accordance with the assessment roll and tax book in the hands of the collector, but the taxes for two years having been paid (though this did not appear upon the tax book on which the advertisement was made), the collector sold for the taxes of the remaining year, which were unpaid.

Our opinion is that this was not fatal to the tax sale.

*Second*—As to the offer to redeem, tender, etc.

The bill alleges that, on the 15th November, 1868, appellee, through his agents, applied to Thweatt to redeem the land, and tendered to him the amount of taxes and penalty paid thereon, costs of sale, and 100 per cent upon the whole amount, etc., which were refused.

These allegations are denied and put in issue by the answer.

Goode testified that, in January or February, 1869, appellee having furnished him the money to redeem the land, he gave it to W. W. Wilkins, his attorney, to redeem the land, and he was informed by his said attorney that he employed Oliver H. Oates to tender the money to Thweatt, and it was refused; that Oates

also informed witness that he had made a tender of the money to Thweatt, who declined to allow any redemption.

Wilkins testified that sometime between the 9th of March, 1868, and 9th of March, 1869, Goode, who was his client, and married a daughter of the testator of appellee, and was interested in the redemption of the land, handed him $16.85, to be used in the redemption of the land, and that he sent the money to Oates, of Helena, where Thweatt resided, and instructed him to tender it to Thweatt for the redemption of the land, and that witness was afterwards informed by Oates that he had actually tendered said sum of money to Thweatt prior to the 9th of Mrch, 1869, or had offered to tender the same, and that Thweatt had waived a formal tender thereof, and refused to allow the land to be redeemed.

Appellants filed exceptions to the depositions of Goode and Wilkins, on the grounds that the statements of Oates, proven by them, were hearsay, and incomptent.

It does not appear that the court took any action upon the exceptions, but of course the declarations of Oates, made to the witnesses, in the absence of appellees, were inadmissible as evidence, under familiar elementary rules.

These depositions cannot be treated as proving the alleged tender.

The appellee testified that after the sale of the land for taxes, and before the time for redemption expired, he gave Goode a draft for the money to be paid Oates, his attorney, with which to redeem the lands; that being sick at the time, he was unable to attend to it in person.

He deposes nothing further as to the tender.

In answer to a special interrogatory propounded by appellee to Thweatt, relating to the tender, he made the following statement: "During the month of February, 1869, O. H. Oates told

me in his office at Helena that Judge Wilkins had requested him to redeem the Walker or Brannon land for Tom Goode. I told him that I had transferred my certificate of purchase to Graham and Scaife, who lived in Helena, and whom he knew, and that I had no interest in the land in controversy. He then remarked, 'well, I will send Wilkin's money to him,' or something to that amount. I perhaps said to him that Goode had no right to redeem as he had slipped into possession under Brannon, who I claimed held under me. That is all the conversation I recollect having with Oates on the subject, and as I had gone to his office on other business, we changed the conversation. I did not waive the tender unless this amounted to a waiver. I do not recollect the exact day of the month, but it was previous to the 9th day of March, 1869. I had already assigned my certificate of purchase to my co-defendants Graham and Scaife."

Wm. A. Wilburn deposed as follows : "I heard a conversation between Col. O. H. Oates and P. O. Thweatt, at my office in Clarendon, in which Col. Oates proposed to pay to Thweatt the redemption money for the Brannon land, and in which he told Thweatt if necessary he would count the money. This Thweatt said was not necessary as he would waive or acknowledge the tender. The precise date of this conversation I do not remember. There was no question as to time in the conversation, and I think Thweatt remarked that that question was not involved at all, and I understood that tender to be for the redemption of the land which had been purchased at tax sale by Thweatt, and which had been sold by Ezekial Black as executor of the will of William Walker, deceased, to Wm. F. Brannon. I understood it to be the land which I now understand to be in controversy in this suit. That conversation occurred, I think, at some time of the Circuit Court prior to the institution of this suit."

The assignment of the certificate of purchase by Thweatt to Graham and Scaife bears date of 18th of December, 1868. The

amended bill alleges that the tender was made to Thweatt before the assignment, and, if after, that Thweatt was the agent of the assignees. His agency for the assignees was denied and not proven.

The proof does not show that Oates was furnished with money, or made an agent to redeem the land until after the assignment. Goode testified that in January or February, 1869, appellee having furnished him the money, he gave it to Wilkins, his attorney, to redeem.

Wilkins testified that he sent the money to Oates and instructed him to redeem sometime between the 9th of March, 1868, and 9th of March, 1869. This was a long gap.

Thweatt stated that Oates mentioned the matter to him in February, 1869, and he referred him to Graham and Scaife to whom he had previously assigned the certificate.

Wilburn does not fix the time of the conversation which he heard between Oates and Thweatt at Clarendon. It was after the tax sale, and at some term of the Circuit Court prior to the institution of this suit.

This suit was commenced 5th January, 1870.

The conversation must have occurred after Oates was intrusted with the matter of redeeming the land, and the proof fails to show that he was requested to redeem earlier than January, 1869, which was after Thweatt had sold the land to Graham and Scaife and assigned to them the tax certificate of purchase.

The proof therefore fails to sustain the allegations of the bill that the tender was made before the assignment, or that if made after the assignment, Thweatt was the agent of the assignees.

But if a tender to Thweatt after he had made the assignment would be good, it was not well proven. He stated that when Oates said to him that he had been requested by Wilkins to redeem the land, he told Oates that he had transferred the certificate to Graham and Scaife, etc., whereupon Oates remarked:

"Well, I will send Wilkins' money to him." It does not appear that Oates offered him the money, which he should have done if Thweatt was bound to accept it notwithstanding he had assigned the certificate.

Wilburn does not state that the conversation which he heard between Oates and Thweatt occurred before the 9th of March, 1869, when the time for redemption expired. If the offer to redeem or tender was made after the expiration of the time allowed by law to redeem, no matter what Thweatt said about the time, or a waiver of time, or the presence or counting of the money, nothing short of the acceptance of the redemption money by him would have waived a compliance with the statute limiting the time for redemption. Cooley on Taxation, 368; *Cox* v. *Wolcott, et al.*, 27 Pen., 154.

Thweatt being a non-resident of Monroe county, it was his duty, after he purchased the land, to appoint an agent in that county, with power to receive the redemption money, and failing in this the appellee had the right to pay the money to the collector of the county, which, if done within the year, would have been a valid redemption. Gould's Digest, ch. 148, sec. 146. But there was no allegation in the bill, or proof, that the money was paid to the collector.

In the amended bill, after averring the tender of the redemption money to Thweatt, and a refusal by him to accept it, the appellee alleged that he deposited the money with the state treasurer.

This allegation was no doubt made with the view of bringing the case within the provisions of sec. 144, ch. 148, Gould's Digest, but no evidence of such deposit was produced by the appellee.

The statute made the certificate of purchase assignable, and the assignment vested in the assignees all the right and title of the original purchaser. Gould's Digest, ch. 148, sec. 127.

They were entitled to the deed from the collector, on failure of redemption within the time prescribed by law, which was one year from the sale. Ib., sec. 129.

If redeemed they were certainly entitled to the redemption money, and the value of the improvements, if any had been made on the land. Ib., sec. 143.

Why the appellee, or his agent, on being informed that the certificate of purchase had been assigned to Graham and Scaife, did not tender the redemption money to them, does not satisfactorily appear. A payment, or tender, to them in apt time would certainly have been good. *Bright* v. *Boyd*, 1 Story Rep., 478.

Possibly a payment or tender to Thweatt, after he had assigned the certificate, might have been valid, if appellee or his agent had received no notice of the assignment. *Faxon* v. *Wallace, et al.*, 101 Mass. R., 144. But as to this we need express no positive opinion in this case.

The decree of the court below must be reversed, and a decree entered here dismissing the bill.