McCAGUE INVESTMENT CO. v. MALLIN, ET AL.

(No. 787; Decided February 11th, 1918; 170 Pac. 763.)

TAXATION—REDEMPTION FROM TAX SALE—EVIDENCE—TAX SALES—SALES FOR TAXES OF DIFFERENT YEARS—NOTICE OF SALE—TAXES FOR WHICH LAND MAY BE SOLD—COUNTIES—CONSTITUTIONAL LIMITATION ON TAX LEVIES—TAX FOR COUNTY REVENUE—PROPERTY BID IN BY TREASURER—RESALE BY COUNTY—TAX DEED.

1. There was no statute in effect in 1899 requiring the filing or preservation in the office of the county treasurer of a copy of the newspaper containing the advertised list of property to be sold for taxes, and evidence in an action to redeem from a tax sale on January 3rd, 1899, for taxes for the years 1893 to 1898, inclusive, that the only notice of

such sale found in the treasurer's office referred to the tax for 1898, was insufficient proof that no notice of sale for taxes for preceding years was published.

2. A sale of land on January 3rd, 1899, for delinquent taxes for the year 1898 under a notice correctly stating the amount of taxes due for that year was valid, even though it should appear that the land was also sold for delinquent taxes of preceding years, not included in the sale notice, there being no statute in effect at the time requiring a tax sale to include all the delinquent taxes of preceding years.

3. Compiled Statutes, 1910, Section 2438, requiring county treasurers to bid in land that cannot be sold for the amount of taxes due thereon with costs of advertising does not prevent separate sales of the same land for the taxes of different years.

4. A tax sale is not invalid because of the fact that the sale notice published as required by Compiled Statutes, 1910, Section 2421, did not correctly state the amount of taxes due and unpaid, hence a sale for the taxes for a number of years under a notice specifying only the amount of tax due for the preceding year was not invalid.

5. If the amount of taxes is required to be stated in a notice of tax sale, or if an omission from the notice of the taxes of preceding or other years when the amount for one year is stated, is an irregularity or defect in the notice, such irregularity or defect does not invalidate the sale in view of Comp. Stat. 1910, Section 2425, providing that no irregularity or informality in the advertisements shall affect in any manner the legality of the sale or the title conveyed by the treasurer's deed, but that in all cases the statute shall be deemed sufficient notice to the owners of the sale of their property.

6. Compiled Statutes, 1910, Section 2421, provides that 10 per cent of the amount of taxes due shall be added when lands are advertised. Section 2411 provides for a collector's fee of $1 for advertising property for sale for taxes to be collected from the taxpayer. *Held,* that the 10 per cent is intended to cover the advertising expense, and refers to the expense of publishing the notice of sale in a newspaper, and the collector's fee is independent of and additional to the 10 per cent, and both amounts were properly included in the amount for which land was sold.

7. In view of Compiled Statutes, 1910, Sections 1935, 2320, 2401-2405, and the statutes relative to school taxes enacted since the organization of the territorial government, including

Rev. Stat. 1887, Section 3768, in force when the constitution was adopted, all of which make a distinction between the general county school tax levied upon all the taxable property in the county and apportioned among the several school districts in the county and the school district taxes voted by the district and levied on the taxable property of the district by the board of county commissioners, such school district taxes are not to be considered in determining whether the county tax levy exceeds the limitation prescribed by Const., Art. 15, Section 5, which provides that for county revenue there shall be levied annually a tax not exceeding 12 mills on the dollar for all purposes, including the general school tax.

8. Under Rev. Stats. 1899, Sections 570-592, relative to levying a tax upon the taxable property within a school district to pay the interest on its bonds and to provide a sinking fund as to a certain class of bonds to redeem them at maturity, the tax·levied for the payment of the principal or interest of the bonds of a school district is not a "tax for county revenue" within Const., Art. 15, Section 5 limiting the tax for county revenue to 12 mills on the dollar.

9. If, under Comp. Stats, 1910, Section 2440, relative to the sale of land bid in by the county treasurer at tax sales, the deed should be executed by the treasurer, and not by the board of county commissioners, where the time in which to redeem from the tax sale had expired, and the purchaser had paid the price and was entitled to a deed, the failure of the treasurer to execute and deliver a deed or of the county commissioners to cause it to be executed and delivered could not invalidate the tax sale or the subsequent sale by the county or give the property owner a right to redeem from the tax sale.

Error to District Court, Laramie County; Hon. William C. Mentzer, Judge. On rehearing. For former opinion, see 23 Wyo. 201, 147 Pac. 507. Abstracts of briefs filed on the merits were published with former opinion.

Potter, Chief, Justice.

This is an action to redeem from a tax sale of certain real estate. The property involved is briefly described as all of Central Addition to the City of Cheyenne. It consists of twelve blocks, numbered from 1 to 12, inclusive, sub-divided into lots, and was platted and the plat thereof

recorded in 1890 by William L. McCague, the owner of the land, the recorded plat showing a dedication of the streets and alleys to the public use.

The tax sale in question occurred on June 3, 1899, and the property was sold to the county for the taxes for the years 1893 to 1898, inclusive, amounting in the aggregate, including penalty, interest and cost of advertising, to $667.96. The sale to the county was under the statute providing that any real estate that cannot be sold for the amount of taxes and cost of advertising due on the same at the time of the tax sale, or on which no bids are offered, shall be bid in by the county treasurer, and shall then become the property of the county. (Comp. Stat. 1910, Sec. 2438.) The property was assessed in each of said years in the name of William L. McCague and was described on the tax list of 1893 as Central Addition, and in the other years as Central Addition, Blocks 1 to 12. On December 8, 1904, pursuant to an order of the board of county commissioners, the property was sold by the county to Charles F. Mallin for the sum of $450, under an advertisement published by the board calling for sealed bids. And on that date a deed was executed to said Mallin for the property signed by the chairman of the board of county commissioners and the county clerk; the deed reciting the non-payment of the taxes, the fact that the property was bid in by the county treasurer for the county, and the adoption of a resolution by the board to dispose of the same at private sale in accordance with the provisions of the statute in such case made and provided.

The action was brought by the McCague Investment Company, the grantee of William L. McCague, against the said Charles F. Mallin, the Board of County Commissioners of the County of Laramie, and several other parties, each of whom, the petition alleges, claims an interest in the land under the deed from the county adverse to the plaintiff's title. The statutory time for redemption from a valid tax sale had expired, but the plaintiff alleges by its petition that the sale was void, and also that the deed from the county to the defendant Mallin is void. Upon a trial in the

District Court without a jury there was a general finding and judgment for the defendants.. The case is here on error, and the questions presented relate to the sufficiency of the evidence to show a right in the plaintiff to redeem, under assignments of error that the judgment is not sustained by sufficient evidence and is contrary to law.

The validity of the tax sale is challenged on three grounds: (1) That the published notice of the sale did not include all the unpaid and delinquent taxes. (2) That the property was sold for the cost of advertising in excess of the amount authorized by law, in addition to the taxes, penalty and interest. (3) That the tax levy for each of the years aforesaid exceeded the limit fixed by the constitution.

1. The statute provides, and it was so provided at the time of the sale in question, that the county treasurer, who is and was ex officio collector of taxes, shall give notice of the sale of real property for delinquent taxes, by publication thereof, once a week for four weeks, in a newspaper in his county, if there be one, the first insertion of which shall be at least four weeks before the day of sale,. and by a written notice posted on the door of the court house for four weeks before the sale (provision being also made for posting the notice in other places if no newspaper is published in the county); that such notice shall contain a notification that all lands on which the taxes of_____have not been paid, will be sold, and the time and place of sale, with a list of the lands. The statute, in the same section, also provides that ten per cent upon the amount of taxes due shall be added when lands are advertised. (Comp. Stat. 1910, Sec. 2421; Rev. Stat. 1899, Sec. 1883.)

The claim and contention that the published notice of the sale was defective is based upon a published notice of a sale of lands for taxes to be held on June 3, 1899, in the *Wyoming Tribune* of May 26, 1899, a newspaper published in Cheyenne in said county, which was introduced in evidence by the plaintiff, after it had been identified as a paper found among the files in the county treasurer's office by the incumbent of that office at the time of the trial. That witness

testified that he had been county treasurer since January 6, 1911, and for the two years prior thereto was deputy county treasurer; that although there was no mark on the paper to indicate that it had been filed in the treasurer's office, it was found there when plaintiff's counsel requested a copy of the advertised list of taxes for the year 1898; and that it had been the custom of the treasurer's office to keep among the files thereof copies of papers containing the annual advertised list of taxes. He further testified, on cross-examination, that the newspaper aforesaid was supposed to be an official record, but he was without personal knowledge that it was such a record and could not say that it was.

The said published notice is dated "County Treasurer's Office, Cheyenne, Wyo., April 5, 1899," and reads underneath the date and preceding a list of the property, taxes, etc., as follows: "Notice is hereby given that on the third day of June, in the year of our Lord one thousand, eight hundred and ninety-nine, at the court house, City of Cheyenne, County of Laramie, and State of Wyoming, a sale of real estate for taxes due and unpaid on the same will take place between the hours of 9 a. m. and 5 p. m. Said sale will be continued until all of said property is disposed of. The real estate to be offered at said sale, together with the taxes, penalty, interest and costs due on the same, is described as follows, to-wit:" That is followed by a list containing in the first column the owner's name and description of property, and in other separate columns the 1898 tax, the penalty and interest, the cost of advertising, and the total of the several amounts; the description as to the property in question reading as follows: Under "Owner's Name and Description of Property": "W. L. McCague, all blocks 1 to 12, Central addition"; under "Tax 1898": "$25"; under "Penalty and Interest": "$2.90"; under "Cost for Advertising": "$3.50"; and under "Total": "$31.40".

The amount of the tax for 1898 was correctly stated. Plaintiff's counsel assume it to have been the notice under which the sale occurred not only for the taxes of 1898, but also for the taxes of the other years mentioned, and they

refer to it in their brief as prima facie proof of the notice of said sale; and therefore of the alleged fact that the notice of the sale did not include all of the unpaid and delinquent taxes due upon the property. But there was no proof that it was the only notice published of the sale held on June 3, 1899. It might perhaps be inferred from the date of the notice and the date of the paper in which it is found that it is the notice under which the property was sold for the taxes of 1898, though there is no testimony or other proof of that fact aside from the paper itself and the record showing that the sale occurred on the date fixed by the notice. The former treasurer who conducted the sale was not called as a witness or any other person having knowledge of the facts, nor was it shown that no such witness could be produced.

The statute does not provide for filing or keeping in the treasurer's office or elsewhere a copy of the newspaper containing the advertised list of property to be sold for taxes, or the published notice of a tax sale. The only testimony as to the notice of the sale in question is that of Ray K. Olds, the county treasurer at the time of the trial, and who had been connected with the office for less than four years. He had no personal knowledge of the sale or of this particular notice, and his testimony as to the custom of filing or keeping such papers in the office was only that it had been the custom since his connection therewith and that there were a bunch of papers there, some of which he found to contain an advertised list of delinquent taxes for which property was to be sold, but he did not examine all of them. While he testified that the paper aforesaid was the only one found in the office advertising the property for sale for the taxes of 1898, he did not say that it was the only paper in the office containing a published notice of a sale to be held on June 3, 1899, nor does it appear that he was asked whether a notice of a sale on that date for the taxes of either of the preceding years aforesaid was to be found in the office or whether he had made a search for any such notice. He was shown and identified as a record of the office a delin-

quent tax list dated August 17, 1898, advertising a sale for the delinquent taxes of 1896 on September 15, 1898—not a published list, but a list made up and signed by the treasurer which might be furnished a newspaper for publication, which list, he testified upon examination, did not include any of the lots or blocks of Central Addition. But he did not know whether said list or notice of sale had been published, and it is not shown that it was published, or that a sale occurred under it. For all that the published notice aforesaid of the sale of June 3, 1899, or the evidence, discloses there may have been another notice or other notices of the sale on said date for the taxes of the other years for which the sale of this property appears to have been made. The fact that no notice of such sale including a statement of the taxes of the other years could be found, and that is the most that might be inferred from the evidence as to the publication of such notice, is not proof that none was published, nor would it vitiate the sale. (Davis v. Harrington, 35 Kan. 196, 10 Pac. 532; Stockler v. Sillsbee, 41 Mich. 615; Hoffman v. Pack, Woods & Co., 123 Mich. 74; Cowles v. Adams, 78 Neb. 130.) In Stockle v. Sillsbee, supra, Judge Cooley, speaking for the court, said, concerning a claim that no report of highway commissioners as a basis for a tax for highway purposes had been made as required by statute: "The judge finds that 'there was no report to be found'; not that none was made. This is not sufficient to establish the negative."

But if the notice aforesaid was the only published notice of the sale, the failure to include therein a statement of the amount of the delinquent taxes for all the preceding years would not invalidate the sale. So far as the point now being considered is concerned, the notice having correctly stated the amount of the tax of 1898, a sale would seem to be authorized thereunder at least for the taxes of that year. We observe nothing in the statute in force at the time which would prevent a valid sale for the tax of 1898 without a sale for the taxes of the preceding years, or that would render a sale for the taxes of one year invalid, if it

should appear that a sale at the same time for the taxes of
another year was without proper notice or irregular and
void for some other reason.   And we think it clear that
such a sale under either of the conditions mentioned would
not be void in the absence of a statute regulating the mat-
ter.   (Cooley on Taxation, 2nd Ed. p. 511, 3rd Ed. p. 981;
Keen v. Sheehan, 154 Mass. 208, 28 N. E. 150; Burns v.
Ford, 124 Mich. 274, 82 N. W. 885; Cowell v. Washburn,
22 Cal. 520; Hurley v. Powell, et al., 31 Ia. 64; Preston v.
Van Gorder, 31 Ia. 250; Shoemaker v. Lacey, 38 Ia. 277;
Hough v. Easley, 48 Ia. 330.)   It was held in Cowell v.
Washburn, supra, where there had been a sale for the taxes
of one year and the purchaser sought to enjoin a subse-
quent sale for the taxes of the preceding year, that neither
the failure to include the delinquent tax of one year with a
tax of the subsequent year, nor a sale for the taxes of the
subsequent year divested the lien for the prior tax, and the
injunction was denied.   In Keen v. Sheehan, supra, land
was advertised by the collector of taxes at the same time
and in the same newspaper for the taxes of 1880 and 1881,
and it was sold at the appointed time and place to one per-
son for the taxes of 1880 and later at the same sale to an-
other for the taxes of 1881.   The question was, as stated
by Mr. Justice Holmes in delivering the opinion of the
court, whether land can be sold thus successively at the
same time and place, by the same collector, for the taxes of
different years.   It was answered in the affirmative, the
court saying:  "We see no objection to such a course suf-
ficient to warrant our declaring the demandant's title void."
The demandant was the purchaser for the later year's tax.
Further, it was said:  "If the sale for the tax of 1880 had
been made by a different collector, on an earlier day and at
a different place from the sale for the tax of 1881, we doubt
if it would have occurred to any one to deny the validity of
the subsequent sale on the ground that the tax for 1881 was
due when the former sale took place.  The fact that the two
sales were made by the same man at the same place and on

the same day does not seem to us to make any change in their effect."

Under the Iowa statute providing for a sale on the first Monday of October in each year of all real property for all the delinquent taxes of the preceding year or years, and requiring the sale to be made for and in payment of the total amount of taxes, interest and costs due and unpaid, it was held in two of the Iowa cases above cited that one sale only is authorized, and that a separate sale for the taxes of one year frees the land from the lien of the delinquent taxes of the preceding years. The sale, however, was not held to be void, but was given effect as a valid sale for the one year's tax and an exhaustion of the power to sell for the taxes then delinquent. In the other Iowa case, Hurley v. Powell, it was held that a sale was not invalidated by the fact that the taxes for one of the years for which the land was sold had been paid.

At the time of the sale in question our statutes did not expressly require a sale of land for taxes to be made for all the delinquent taxes of the preceding years. A statute to that effect was published as Chapter 56 of the Laws of 1897, but it was held invalid by this court for the reason that Section 1 of the act as enrolled and published did not finally pass either branch of the Legislature, as shown by the legislative journals, and the section numbered one which was passed was not copied into the enrollment and did not therefore receive executive approval, and that the other sections of the act were so inseparably connected with Section 1 that without it they could not stand. (State ex rel. Swan, 7 Wyo. 166, 51 Pac. 209, 40 L. R. A. 195, 75 Am. St. Rep. 889.) In 1901, after the sale in question, an act was passed declaring it to be the duty of the county treasurer to advertise for sale in the manner provided by law, during or previous to the first week in June in each year, all property upon which the taxes have not been paid for the preceding year or years. (Laws 1901, Chap. 61; Comp. Stat. 1910, Sec. 2413.)

Further, we are not satisfied that a tax sale of real property must be held invalid in any case for a failure to correctly state in the notice the amount of the taxes due and unpaid, or that the sale here challenged, if made under the notice aforesaid for the delinquent taxes of all the preceding years, would be invalid for the reason mentioned as to the taxes for the years preceding 1898.  Our statute does not expressly require the amount of the tax to be stated in the notice.  It does provide that a list of the lands shall be included therein, but is silent as to stating the amount of the tax, thus seeming to exclude the necessity of stating such amount, though it is no doubt proper and customary in such a notice to include with a list of the lands a statement of the amount of the tax, as well as the penalty and interest and costs.  But we are not prepared to hold that the omission of such information would amount to a non-compliance with the statute and render the sale void.  The cases cited for our consideration upon this question were decided under statutes specifically requiring the amount of the taxes to be stated in the notice.  And the argument that the notice introduced in evidence was defective for omitting a statement of all the delinquent taxes, or failing to state the correct amount thereof, was based upon the principle, as stated in the brief of counsel, that where the statute requires the notice to include all the taxes, interest and costs for which the property is to be offered for sale and sold, it must include the total amount thereof to support a tax deed.  Counsel cite, in this connection, Section 2438, Compiled Statutes, 1910, which provides that at the tax sale of each year any real estate that cannot be sold for the amount of taxes and cost of advertising due on the same, or on which no bids are offered, shall be bid in by the county treasurer and shall then become the property of the county; and they contend that the section commands the treasurer to advertise all the taxes then due upon the property.  But, in our opinion, the section does not refer to the notice of the sale, nor do we think it can be construed as preventing separate sales for the taxes of different years.  The section

was enacted in 1899 as the first section of an act providing for such sale to the county, there having been no previous statute authorizing a sale for taxes except to a private bidder. The principal object of the act, as shown by its provisions, was to provide for a sale to the county under the conditions named and for the subsequent disposition of the property.

Another reason for the above statement that, if made under the notice aforesaid, the sale would not be invalidated by the omission from said notice of the amount of taxes for the years preceding 1898, is found in Section 2425, Compiled Statutes, 1910 (Rev. Stat. 1899, Sec. 1887). That section provides: "No irregularity or informality in the advertisements shall affect in any manner, the legality of the sale, or the title to any real property conveyed by the treasurer's deed under this chapter, but in all cases the provisions of this chapter shall be deemed sufficient notice to the owners, of the sale of their property." The section was in the original act providing for the notice and has been continued in force without change, except the substitution of "chapter" for "act". (Comp. Laws 1876, Ch. 109, Sec. 48, p. 561.) This, in our opinion, would be a sufficient answer to the objection that all the taxes were not included in the advertisement, if the amount of the taxes was required to be stated, or if an omission of the taxes of preceding or other years when the amount for one year is stated, in the absence of a statute requiring a statement of the amount of the unpaid taxes, would be irregular or constitute a defect in the notice. Such irregularity or defect, by reason of said statutory provision, would not be fatal. (Shawler v. Johnson, 52 Ia. 472, 3 N. W. 604; Davis v. Magoun, 109 Ia. 308, 80 N. W. 423; Virden v. Bowers, 55 Miss. 1; Laird v. Hiester, 24 Pa. St. 452; Heft v. Gephart, 65 Pa. St. 510; Gauley Coal Land Co. v. Koontz, 77 W. Va. 583, 87 N. E. 930; Watkins v. Inge, 24 Kan. 612; Thweatt v. Black, 30 Ark. 732; Cooley on Taxation, 3rd Ed., pp. 521-525.)

It is said in Cooley on Taxation, 3rd Ed., at page 928: "There is no constitutional provision entitling one to notice

in a particular mode; what the statute has made sufficient must be deemed so." And in Allen v. Armstrong, 16 Ia. 508, 514, the court, by Judge Dillon, said: "The Legislature might provide for the sale of property for delinquent taxes, on a given day, without requiring any notice." In Davis v. Magoun, supra, the Supreme Court of Iowa declared that the notice provided for is not jurisdictional; "that, as the Legislature could dispense with all notice save that given by the law itself, it could provide that the failure to give such other notice shall not affect the regularity of the sale; and this it has done." The Iowa statute contains a provision in the same language as our own above quoted, but the statute of that state also prescribes the time when real property shall be offered for sale for delinquent taxes, with which, of course, the notice must correspond. As the exact date for the sale is not fixed by our statute, no doubt a notice fixing the date is essential. In the earlier Iowa case above cited, Shawler v. Johnson, it was contended that the sale was void because the advertisement did not include the land in controversy. The answer alleged that notice was given that a sale for delinquent taxes would occur on the day that the sale was made; and the notice fixed the time of sale. The court said:

"The delinquent was bound to know that the taxes on his land had not been paid. The law notified him that all delinquent lands were required to be offered for sale. He cannot shield himself from the consequences of his neglect merely from the fact that the published notice did not contain the land in question. Knowing his lands were delinquent, it ought to have occurred to him that the omission was a mere mistake, and he should have governed his action in accordance with the suggestion."

The statute of Iowa (Code of 1873, Sec. 872) provided that the notice should contain a description of the real property to be sold. The provisions of our revenue statute, as originally enacted in 1869 by the first territorial legislature, closely resembled in the order and provisions of the several sections the Iowa statute on the subject, as shown by the

revision of 1860 of the statutes of that state. Some of the provisions in the Iowa statute were omitted from the act as adopted in this state, and the language of some of the sections differs in some respects, though frequently having the same meaning. The Iowa statute as to notice, unlike our own, provided for stating the amount of the taxes. But the several provisions and arrangement of the sections are, generally, so similar that it seems probable our statute was taken from Iowa, or at least, that the statute of that state was referred to as a guide in the drafting of our original revenue law, many of the provisions of which have remained in force without amendment.

In the Arkansas case of Thweatt v. Black, supra, the land was advertised for the taxes of three years, but was sold for the taxes of one year only, the officer having discovered that the taxes for the other years had been paid. It was held that the erroneous advertisement for the taxes of three years, where only the taxes for one year were due, did not vitiate the sale. In Watkins v. Inge, supra, the notice incorrectly stated the amount necessary to redeem, but the Kansas Supreme Court, applying their statute that no irregularity shall invalidate the proceeding or the title conveyed by a tax deed, held that under the statute the error could not be held fatal to the notice or the tax deed. The other cases cited are all in point under statutes similar to our Section 2425.

2. The contention that the property was sold at the tax sale for the cost of advertising in excess of the amount of such cost authorized by law is based upon the last clause of the section aforesaid providing for the notice of sale, said clause reading: "Ten per cent upon the amount of taxes due shall be added when lands are advertised." (Rev. Stat. 1899, Sec. 1883; Comp. Stat. 1910, Sec. 2421.) The 1898 tax, as correctly stated in the notice; was $25. The sum of $3.50 was stated as the cost of advertising; and that sum was included in the amount for which the property was sold for the taxes of that year. And it is argued that as said sum exceeded ten per cent of the amount of the tax the

sale for the amount in excess of that authorized ·by the statute was void. Counsel assume that the ten per cent required ·by the section aforesaid to be added when lands are advertised was intended to cover the advertising expense, and we concur in that view, ·but think it had reference to the expense of publishing the notice in a newspaper, and that the purpose was to make certain the amount to ·be charged and collected to reimburse the county for such expense. (See Board of Commissioners v. ·Chaplin, 5 Wyo. 74, 37 ·Pac. 370.) The provision aforesaid was in the original Revenue Act of 1869. But a later statute, enacted in 1882, which seems to have ·been overlooked ·by counsel; provided for a collector's fee of one dollar for advertising property for sale for taxes, to ·be collected from the taxpayer, and that provision has continued in force. (Laws 1882, Ch. 45, Sec. 10; Rev. Stat. 1887, Sec. 3811; Rev. Stat. 1899, Sec. 1873; Comp. Stat.·1910, Sec. 2411.) Aside from the fact that it is found in a later statute, it is clear from the other provisions of the section and of the act of 1882 that the prescribed fee was intended to be independent of and additional to the ten per cent required to ·be added under the other section. Under the two sections the authorized cost of advertising was the amount stated in the notice, and it was properly included ·in the amount for which the property was sold.

3. The contention that the tax levy for each of the years aforesaid exceeded the limit fixed by the constitution ·is without merit. The provision of the constitution cited and relied on in support of the contention is found in Section 5, Art. XV, which reads as follows:

· "For county revenue, there shall be levied annually a tax ·not to exceed twelve mills on the dollar for all purposes, including general school tax, exclusive of state revenue, except for the payment of its public de·bt and the interest thereon. An additional tax of two dollars for each person between the ages of twenty-one years and fifty years, inclusive, shall ·be annually levied for county school purposes."

The levies made by the county commissioners in each of the years in question except 1894 is shown by the evidence. And it appears therefrom that the levy for county revenue, including the general school tax, did not exceed twelve mills on the dollar in either of said years. To bring the levy of each year in excess of the limitation counsel have erroneously included the levies of school district taxes and school district bond tax. School district taxes are not levied for county revenue, and they are independent of the general school tax. (School Dist. v. Comrs., 15 Wyo. 73, 86 Pac. 24, 11 Ann. Cas. 1058. And see Union Pac. Ry. v. Donnellan, 2 Wyo. 478; Sch. Dist. v. Western Tube Co., 13 Wyo. 304, 344, 80 Pac. 155.) The general school tax is a tax authorized by statute to be levied upon all the taxable property of the county, and is not a tax for county purposes or county revenue. (Powder River Cattle Co. v. Comrs., 3 Wyo. 598, 29 Pac. 361, 31 Pac. 278.) School district taxes are voted at the annual meeting of a district for certain purposes authorized by law, and certified by the district clerk to the board of county commissioners. Thereupon the board is required to levy a tax upon the taxable property of the district sufficient to raise the sum voted.

These two classes of school taxes have been provided for by our statutes since the organization of the territorial government. (Laws 1869, Ch. 7; Comp. Laws 1876, Ch. 103, Secs. 17, 52-55, Ch. 109, Sec. 1; Rev. Stat. 1887, Secs. 3927, 3964-3968, 3768; Rev. Stat. 1899, Secs. 531, 1761, 1818-1822; Comp. Stat. 1910, Secs. 1935, 2320, 2401-2405.) From the beginning it has been provided that school district taxes shall be collected by the county collector of taxes and paid to the treasurer of the district, and for many years the collector has been required to pay the same *directly* to the proper district treasurer. (Rev. Stat. 1887, Sec. 3968; Rev. Stat. 1899, Sec. 1822; Comp. Stat. 1910, Sec. 2405.) The general county school tax, so-called because it is a tax levied upon all the taxable property within the county, is required to be apportioned in a specified manner among the several school districts in the county by the county superintendent

of schools, who is thereupon required to draw an order upon the county treasurer in favor of the treasurer of each district for the amount of its proportion.

In view of these statutes and the very clear distinction therein between the general school tax and the taxes levied for school district purposes upon a vote of the district, it is evident that the school district tax was purposely excluded from the limitation of twelve mills upon the tax for county revenue including general school tax. When the constitution was framed and adopted a statute was in force providing that the aggregate tax for territorial and county pur- poses shall in no case exceed sixteen mills on the dollar per annum. (Rev. Stat. 1887, Sec. 3768.) The constitution, in Section 4, Article XV, fixed a limitation of four mills upon the annual levy for state revenue, except for certain stated purposes. And the next succeeding section is the one above quoted limiting the levy for county revenue including the general school tax. The same section of the statute limiting the levy for territorial and county purposes to sixteen mills authorized an annual general school tax, or, as expressed in the statute, "a tax for the support of common schools" not to exceed three mills. By the statute then in force authorizing the levy of special school district taxes, when voted by the district, such a tax was allowed to be levied upon the property of a district not exceeding five to ten mills, the limitation depending upon the amount of the assessed valuation of the taxable property of the district. These statutes must have been in mind when the provision aforesaid limiting the annual levies for state and county revenue were incorporated in the constitution; and no doubt it was deemed necessary to expressly declare the general school tax to be included to bring it within the limitation upon the levy for county revenue. Had it been intended that the limitation should include school district taxes we think they would have been mentioned; and their omission from the section, especially in view of the statutory distinction between the school district tax and the general school tax, and the rate of levy permitted as to the

former tax, makes more evident, if possible, the absence of any intention to include school district taxes within the limitation upon the levy for county revenue. But, as above indicated, an express provision including such taxes would be necessary to bring them within the limitation, since they are in no sense taxes levied for county revenue.

In Powder River Cattle Co. v. Commissioners, supra, the question arose whether a tax of eighteen mills including a general school tax of two mills, levied in 1886, was excessive, under the statute then in force limiting the levy for territorial and county purposes to sixteen mills, and it was held not excessive, this court, by Groesbeck, Chief Justice, saying:

"The 'county school fund,' so-called, appears to be created by the general school tax levied by the board of county commissioners, the poll-tax, and such fines and forfeitures as may be paid into the county treasury according to law. The districts, in their corporate capacity, are entitled to this, and not the county. Not one dollar of this fund can be devoted to any 'county purpose.' At the apportionment and distribution of this fund, the several school districts become entitled to their shares of this fund, which requires but a mathematical computation to ascertain; and prior to this time the county has not the slightest interest or right to any portion of this fund, and the county board has nothing to say in its management, disbursement, or distribution. It belongs to the school districts."

In addition to what has been said as to school district taxes, it requires no argument to show that a tax levied for the payment of the principal or interest of the bonds of a school district is not a tax for county revenue, within the meaning of the section of the constitution limiting the levy of taxes for county revenue. The school district bond tax is provided for by law, and was authorized when the taxes in question were levied. (Rev. Stat. 1899, Secs. 570-592.) The statute made it the duty of the county commissioners to levy annually a tax upon the taxable property within the school district to pay the interest upon its bonds and pro-

vide a sinking fund, as to a certain class of bonds, to re-deem the same at maturity.   (Id., Secs. 574, 586.)

4.  It is finally contended that the county commissioners' deed to the defendant Mallin is void for certain reasons, mainly for the reason that the statute provides for a deed to be executed by the county treasurer upon a sale by the county of property sold for taxes.  The statute providing for bidding in property at a tax sale by the treasurer when it cannot be sold for the taxes due or on which no bids are offered, which was enacted in 1899 (Laws 1899, Ch. 66; Rev. Stat. 1899, Sec. 1900) declared in Section 1 that when bid in by the treasurer the real estate "shall then become the property of the county."  It was further provided in Section 3 as follows:

"After such real estate has become county property, the county treasurer, together with the county commissioners, shall have authority to dispose of it at private sale, at any time, without further notice or publication.  But no such sale shall be consummated unless all the taxes and other accrued costs on the same can be realized by such sale." (Rev. Stat. 1899, Sec. 1902.)

Section 4 provided that the original owner shall have two years from the date of the purchase by the county in which to redeem the same, and that, "after the expiration of two years from the date of sale by the county to any private purchaser, it shall be the duty of the county treasurer to make, execute and deliver to such private purchaser a tax deed for any property so sold."   (Rev. Stat. 1899, Sec. 1903.)

In 1901 (Laws 1901, Ch. 36, Comp. Stat. 1910, Sec. 2440) Section 3 of the act (Sec. 1902, Rev. Stat. 1899), which authorized the treasurer with the county commissioners to dispose of the property, was amended and re-enacted so as to read:

"After such real estate has become county property, the county commissioners of the county owning such property, shall have authority to dispose of the same at any time, at either public or private sale.  If sold at public sale, said

commissioners shall have the right to reject any or all bids, and may continue to offer the same for sale, until the same shall be disposed of." ·

As thus amended the authority given the treasurer to assist in disposing of the property was eliminated, and also the requirement that the sale must realize all the taxes and accrued costs. The sale to Mallin by the county was after the statute had been so amended, and it was no doubt construed as giving full authority to the board of county commissioners not only to sell the property, but, when sold after the time for redemption has expired, to convey it by deed signed by the chairman and clerk of the board. We think it unnecessary to decide whether that would be a correct construction of the statute or not, or whether, under the circumstances of this sale, a deed executed by the treasurer was or is necessary to convey the title to the property. When the county sold the property to the defendant Mallin the time allowed the owner in which to redeem from the tax sale had expired, and if the provisions found in Section 4 of the original act of 1899 (Sec. 1903, Rev. Stat. 1899, Sec. 2441, Comp. Stat. 1910) for a tax deed to be executed and delivered to the purchaser applied in such case, the defendant Mallin, as the purchaser from the county, having paid the purchase price, was entitled to such a deed, and remains entitled to demand that a proper deed be executed and delivered, and that is no doubt also the right of his grantee or grantees. The failure of the treasurer to execute and deliver the deed or the county commissioners to cause it to be executed and delivered, cannot invalidate the tax sale or the subsequent sale made by the county. And clearly it gives no right to redeem from the tax sale. (Welch v. Haley, 224 Mass. 261, 112 N. E. 860; State ex rel. v. Terry, 74 Wash. 208, 133 Pac. 386; James v. Blanton, 134 Ky. 803, 121 S. W. 951, 123 S. W. 328.) For the reasons stated the judgment must be affirmed and it will be so ordered. *Affirmed.*

BEARD, J., concurs.

BLYDENBURG, J., did not sit, not being a member of the court at the time the case was submitted.